**Maryann HUNT, etc., et al,
Plaintiffs-Appellants,**

v.

**GUARANTEE ELECTRICAL COMPANY
OF ST. LOUIS, a Corporation,
Defendant-Respondent.**

No. 46001.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 24, 1984.

Motion For Rehearing and/or Transfer to Supreme Court Denied March 8, 1984.

Application to Transfer Denied
April 16, 1984.

Myron S. Zwibelman, Brown, Crouppen, Walther & Zwibelman, P.C., St. Louis, for plaintiffs-appellants.

Joseph M. Kortenhof, Kortenhof & Ely, St. Louis, for defendant-respondent.

CRIST, Presiding Judge.

Dallas Hunt (decedent) was killed while at work on the mix floor at the plant of his employer, Purex Corporation (Purex). His wife and four children (plaintiffs) brought this wrongful death action against Guarantee Electrical Company (defendant) alleging negligence and strict tort liability for furnishing to Purex a dangerous and defective electrical system. At the close of plaintiffs' case, the trial court overruled defendant's motion for a directed verdict. Following all the evidence, plaintiffs expressly abandoned their negligence action and elected to submit their case on a strict tort liability theory. Defendant's motion for a directed verdict made at the close of the case was again overruled.

With the jury unable to reach a verdict, defendant submitted a motion for judgment made in accordance with its motion for a directed verdict at the close of the case. See Rule 72.01(b). The trial court granted this motion, ruling plaintiffs failed to establish defendant sold or furnished a product to Purex or had participated in the design of the allegedly defective electrical system. The trial court also ruled decedent had been contributorily negligent as a matter of law, thus precluding recovery on a negligence theory. We affirm.

During the 1960's, defendant contracted with Purex to provide electrical workers at the plant, furnish replacement materials and supplies, and supervise and direct an electrical engineering force. A production problem arose on the mix floor. When an ingredient being run through the mix tank was left unagitated for a period of time, it would settle to the bottom and solidify. To solve this problem an automatic timer was installed to activate the agitator inside the mix tank for three minutes at a time with twelve minute intervals between agitations.

To install the timer, it had to be integrated with the existing electrical control panel. A Purex plant engineer and defendant's foreman "worked out" a wiring diagram for this purpose and defendant's employees accomplished the installation. When the timer was set for "automatic," the pre-ex-

isting "manual" on and off switches became ineffective. During the agitation periods while set on "automatic," a red warning light indicated the timer was set on "automatic." A nearby master switch allowed all power to be cut from the timer, control panel, and mix floor machinery. The control panel circuitry, as altered by defendant, had not been changed or modified at the time of decedent's death.

In June of 1979, decedent worked as a utility laborer at Purex. A temporary problem required the production line to be shut down. Decedent noticed lumps accumulating in the mix tank and sought permission from his immediate supervisor to drain the tank and remove the lumps. The immediate supervisor refused permission. Decedent then contacted the supervisor's supervisor, explained the problem, and was told to do what was necessary to remedy the problem.

Decedent returned to the line and informed his immediate supervisor of the directions received from above. With the tank drained, decedent prepared to enter it to manually remove the accumulated lumps. The immediate supervisor admonished decedent not to enter the tank but to clean it with a steam hose instead. Despite this warning, decedent nevertheless entered the tank.

When the immediate supervisor realized decedent had entered the tank, he asked decedent whether he had "cut everything off." Decedent replied he had and continued his task. Later, the supervisor's supervisor joined in removing the lumps from the tank and asked whether everything was shut off. He, too, was assured the power was off. Other than the settings of the switches themselves, the control panel gave no indication, the timer was set in the automatic position and the master switch remained on. As decedent was bringing the last lump out from the mix tank, the agitator automatically engaged, drawing decedent into the tank and killing him.

Two months before decedent's death he attended a safety meeting at the plant. Although the meeting was for maintenance

employees and decedent was not such an employee, he was nevertheless informed of new safety regulations concerning repair work to mix floor machines. The regulations required all power to the mix floor to be cut off at the main switch while working on the machines. The employee shutting off the power was to tag the switch with his name and the power was to remain off until the person who tagged the switch removed the tag upon completing the repair. This procedure had not been followed when decedent entered the mix tank.

■ The party against whom a verdict is directed is entitled to the benefit of all evidence and reasonable inferences supportive of their cause of action. *National Garment Co. v. City of Paris, Mo.*, 655 S.W.2d 515, 516 (Mo. banc 1983). Even when viewed in this light, plaintiffs' evidence fails to make a submissible case based on strict tort liability.

Section 402A of the Restatement of Torts, Second, adopted by Missouri in *Keener v. Dayton Electric Mfg. Co.*, 445 S.W.2d 362 (Mo.1969) provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not brought the product from or entered into any contractual relation with the seller.

Plaintiffs concede theirs is not a typical case for the imposition of strict tort liability. Plaintiffs claimed defendant "sold, furnished, designed, supplied and assembled the electrical system that controlled the agitator in the mix tank." The "electrical system" was alleged to be defective insofar as it lacked a warning light indicating the timer was set in the automatic position.

The predicate of § 402A liability is the sale of a defective product by one engaged in the business of selling such a product. The seller, insofar as he enters the business of supplying human beings with potentially dangerous products, undertakes a special responsibility for the products so placed on the market. Comment *f* to § 402A.

■ Initially we are confronted with the problem of what, if any, product was sold by defendant. Plaintiffs presented no evidence defendant manufactured, sold, furnished, or supplied the component parts of the timer its employees installed. Contractually, defendant was obligated to supply only replacement materials and supplies. In any event, plaintiffs do not allege a defect in the timing mechanism as it performed as should have been expected when decedent was killed.

Plaintiffs' allegation concerns the overall design of the control panel following installation of the timer. As such, it was encumbent on plaintiffs to prove defendant in the regular course of its business placed the system as designed in the stream of commerce. *Gabbard v. Stephenson's Orchard, Inc.*, 565 S.W.2d 753, 758 (Mo.App. 1978). Plaintiffs did not show defendant was retained to design, furnish, and install an electrical system for the automatic agitation of the mix tank. *Compare Brannon v. Southern Illinois Hospital Corp.*, 69 Ill.App.3d 1, 25 Ill.Dec. 462, 386 N.E.2d 1126 (1978). Plaintiffs did not show defendant was engaged in the business of furnishing electrical timing systems. See Annot., When is Person "Engaged in the Business" for Purposes of Doctrine of Strict Tort Liability, 99 A.L.R.3d 671 (1980). The only evidence linking defendant with any aspect of the system's design came from defendant's retired foreman. When asked who prepared the wiring diagrams to be used in connection with the timer's in-

stallation, he testified he and a plant engineer at Purex had worked on them together with the plant engineer approving everything. No evidence was presented as to the origin of the plan for the system itself.

Absent proof defendant designed, assembled, and sold the system to Purex in the course of its business, plaintiffs' proof goes only to showing defendant installed an automatic timer pursuant to its contract to provide the services of electricians. The policy reasons justifying imposition of strict tort liability are not present in this case where defendant rendered professional services in installing a timer. See *Hinojasa v. Automatic Elevator Co.*, 92 Ill. App.3d 351, 48 Ill.Dec. 150, 153, 416 N.E.2d 45, 48 (Ill.App.1980); *Chubb Group of Insurance Cos. v. C.F. Murphy & Assoc.*, 656 S.W.2d 766, 780 (Mo.App.1983).

■ With respect to plaintiffs' negligence claim, the trial court correctly decided decedent had been contributorily negligent as a matter of law. Decedent failed to observe the tag-out procedures explained to him in a safety meeting two months before his death. On the day of the accident decedent failed to heed his supervisor's order not to enter the mix tank. Decedent was a qualified mix tank operator familiar with the operation of the control panel. After being discovered in the mix tank decedent was twice asked if all the power had been shut off and each time responded affirmatively. The evidence is clear decedent voluntarily and unnecessarily subjected himself to a known danger. See *Hahn v. Flat River Ice & Cold Storage Co.*, 285 S.W.2d 539, 543–44 (Mo.1955); *Jacobson v. Vestal*, 361 S.W.2d 677 (Mo. 1962).

Judgment affirmed.

PUDLOWSKI and SIMON, JJ., concur.