680 F.Supp. 1343 (1988)
Steven C. COUNTS, Plaintiff,
v.
MK-FERGUSON COMPANY, et al., Defendants.
No. S85-253C(5).
United States District Court, E.D. Missouri, Southeastern Division.
March 7, 1988.
*1344 Phillip J. Barkett, Jr., Dempster, Barkett & McClellan, Sikeston, Mo., for plaintiff.
John Doyen, Brinker, Doyen & Kovacs, Clayton, Mo., Gary L. Mayes, Harry W. Wellford, Jr., Thompson and Mitchell, St. Louis, Mo., for defendants.

MEMORANDUM
LIMBAUGH, District Judge.
This matter is before the Court to consider defendants' motions for summary judgment. The case was originally set for trial on February 29, 1988 in Cape Girardeau, Missouri but was removed from the docket.

Facts.
The plaintiff was injured on August 3, 1984 while working as a laborer in a grain storage building in Ristine, Missouri. Plaintiff was employed by the E.B. Gee Company and at the time of his accident was moving grain into an underground screw auger which ran beneath a portion of the building floor. The rotating auger was used to move grain from one building to another and access to the mechanism was provided by a series of 19 inlets which were positioned across the floor of the storage building. The building was designed so that grain would flow by force of gravity into the inlets and down to the auger system. Apparently, it was necessary for workers to help the process along by shoveling or sweeping some of the grain into *1345 the inlets. Plaintiffs injury occurred when he slipped inside the grain storage building, and his left leg was mangled by the underground auger.
The facility of which the grain storage building was a part was a crop storage and refining operation which had been built many years before. Defendant Buckeye's predecessor in interest, the Buckeye Cotton Oil Company, bought the facility from Southeast Oil Mill, Inc., on or about December 30, 1946. Buckeye purchased the property to operate as a soybean storage and refining mill. Procter & Gamble, the parent company of defendant Buckeye and also a defendant in this action, never had an ownership interest in the Ristine property.
At the time of the sale to Buckeye, Southeast Oil had erected five quonset-hut bean storage buildings at the facility and had installed at least part of the underground auger conveyance system in use at the time of plaintiff's injury. The design for the system was completed prior to the sale of Buckeye and the screw augers themselves were manufactured by a company in Texas. There is a question of fact as to whether defendant Buckeye, and its contractor at the time HK-Ferguson (now MK-Ferguson) completed construction of the auger system in operation in the building in which plaintiff was injured. For purposes of these motions, the Court will take plaintiff's version of the facts as controlling.
The inlets or slots above the auger system measured 11" × 12" and were equipped with a steel slide plate which could be adjusted from a fully-closed to a fully-opened position to regulate the flow of soybeans into the auger tunnel. Removable steel guard grates were provided in each of the storage buildings and served as a safety device to prevent accidents such as that which befell plaintiff. Although these grates were in place at the time Buckeye purchased the facility, they were missing on the day that plaintiff was injured.
The Ristine facility became operational in February of 1947 and for the next 11 years Buckeye operated the property to store soybeans and for the production of certain oils which were purchased by Procter & Gamble as well as others. In 1958, Buckeye sold the facility, including all equipment, buildings and structures to Ralston Purina.[1] Ralston operated the facility from 1958 until approximately 1964. By 1962, the steel guard grates were no longer present and sometime thereafter a Ralston employee stepped into an access slot entangling his leg in a screw auger beneath the floor of one of the buildings. Following this accident, grates were again provided to cover the access slots.
Subsequent to Ralston's ownership of the Ristine property, the facility was owned by a group known as the Johnson Brothers. By the time plaintiff was injured in 1984, the property had changed hands several more times and was then owned by plaintiff's employer, E.B. Gee. Plaintiff has brought this action against the defendants alleging negligence and strict liability in the construction of the auger access slots with removable grates. Plaintiff argues that removable safety grates constitute a defect in the system since their absence meant that the underfloor auger would be completely exposed. Had these defendants installed permanent grates over these access slots, plaintiff maintains that his injury would never have occurred.

Conclusions of Law.
The motion for summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that do raise genuine issues of material fact. City of Mt. Pleasant v. Associated Electric Cooperative, Inc., 838 F.2d 268, (8th Cir.1988). This case represents one of those insubstantial cases, both factually and legally, that should not be allowed to proceed to trial.

*1346 MK-Ferguson.

Assuming for the plaintiff's benefit, that this defendant installed the screw auger which injured plaintiff's leg, MK-Ferguson, as the former contractor for Buckeye, cannot now be held liable. As to plaintiff's negligence claim, it is the general rule in Missouri that a general contractor is not liable to persons with whom he did not contract after the owner of the property accepts the finished structure or improvement. Honey v. Barnes Hospital, 708 S.W.2d 686, 700 (Mo.App.1986), Chubb Group v. C.F. Murphy & Associates, Inc., 656 S.W.2d 766, 775 (Mo.App.1983), Begley v. Adaber Realty & Investment Co., 358 S.W.2d 785 (Mo.1962), Casey v. Hoover, 114 Mo.App. 47, 89 S.W. 330 (1905). Buckeye accepted the finished facility in late 1947 or early 1948.
Plaintiff has argued that this case falls within an exception to the acceptance rule as stated in the Begley decision:
This exception applies where the structure was so defectively constructed as to be essentially and imminently dangerous to the safety of others; the defects are so hidden and concealed that a reasonably careful inspection would not have disclosed them, and these things are known to the defendants but not to those who accepted them.
Begley at 791. It is established that Buckeye knew that the grates were removable and that plaintiff's employer was aware of the danger presented by the uncovered access slots and that plaintiff had been warned of this danger.[2] It appears that the danger presented by open auger access slots could not be termed a hidden danger and was, in fact, an open and obvious condition.
In addition to the acceptance rule, the court in Chubb Group, supra, at p. 744, cited approvingly from an earlier Missouri decision adopting a factor test in a case involving the question of an architect's liability to a third-party. Those factors included the following:
[t]he extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, and the policy of preventing future harm.
Citing Westerhold v. Carroll, 419 S.W.2d 73 (Mo.1967). When considered in the circumstances of this case, these factors tip strongly in favor of all the defendants.
The policy considerations in Chubb and Westerhold are consistent with § 452 of the Restatement (Second) of Torts which provides:
(1) Where, because of the lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause.
Section 452 is intended to protect the remote party from intervening acts and superseding causes. In the forty years since MK-Ferguson was involved with the Ristine facility, there have been numerous third parties who possessed and controlled the property. The actions of these subsequent owners, especially in relation to the cover grates for the access slots, are sufficient to constitute a superseding cause for plaintiff's injury.
Plaintiff's strict liability claim as to this defendant is even more unsupportable. The Missouri Court of Appeals for the Western District held in Chubb, supra, a case involving a strict liability claim against a contractor, that the underlying consumer protection principles of strict liability do not apply to constructors of large commercial buildings at least when the *1347 building in question is built for a particular client pursuant to a contract. Chubb at 780-781. While the Court noted that strict liability might attach to the manufacturers of certain components of the building, (e.g. steel beams and bolts), it held that the plaintiffs had no cause of action for products liability against the general contractor or the defendant consulting structural engineers.
In Hunt v. Guarantee Electric Company of St. Louis, 667 S.W.2d 9 (Mo.App. 1984) the court affirmed a decision granting defendant's motion for directed verdict in a case similar to the one at bar. In Hunt, the defendant was hired to provide electrical workers and to supervise the electrical engineering work force. The defendant participated with the owners of the plant in installing a timer to activate an agitator inside a mixing tank. The plaintiff's decedent was killed when the system automtically activated when he was inside the mixing tank. The only testimony presented came from a retired former employee and no evidence was presented as to the origin and plans for the system itself. The court held that strict tort liability was not justified absent proof of the defendant's design, assembly, and sale of the system and that "[t]he policy reasons justifying imposition of strict tort liability are not present ... where defendant rendered professional services in installing a timer" and nothing more. Id. at 11-12.
As with the negligence count, the plaintiff in this case has failed to establish or elicit proof as to the design and manufacture of the auger access openings, the screw augers, or the auger conveyance system itself. Mere installation, assuming this took place, is insufficient to impose strict liability on MK-Ferguson. Defendant Ferguson's motion for summary judgment will be granted.

Procter & Gamble and Buckeye.
The facts essential to establish a claim for strict tort liability in Missouri are set forth in the Restatement (Second) of Torts, § 402A. Wright v. Newman, 735 F.2d 1073, 1077 (8th Cir.1984), Keener v. Dayton Electric Manufacturing Co., 445 S.W.2d 362, 364 (Mo.1969). Section 402A provides:
1. One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) The seller is engaged in the business of selling such a product, and
(b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
Assuming that the Ristine plant can be considered a product under the products liability laws, it is quite apparent that neither Buckeye nor its parent Procter & Gamble, were in the business of selling grain processing facilities. The 1958 sale of the plant was an isolated real estate transaction which included the building in which plaintiff was injured, the auger access inlets, and the underfloor screw auger conveyance system. Section 402A liability does not extend to the occasional seller one who sells a product other than in the ordinary course of business. Restatement (Second) of Torts, § 402A, Comment (f), Winters v. Sears, Roebuck & Co., 554 S.W. 2d 565, 569 (Mo.App.1977). Neither of these defendants may be held strictly liable to plaintiff under Missouri law.[3]
As to plaintiff's negligence claims against these defendants, it is clear that these also will not survive summary judgment. Buckeye conveyed the facility in which plaintiff alleges a defective condition to Ralston Purina three decades ago. *1348 Since that time, the property has changed hands on several more occasions. Section 352 of the Restatement (Second) of Torts provides:
Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time the vendee took possession.
Section 353 adds that liability may be imposed only under certain limited circumstances when:
(a) the vendee does not know or have reason to know of the condition or the risk involved, and
(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the risk.
In this case the most recent vendee (and probably those before it) was aware of the condition and had reason to know of it. As stated previously, the danger presented by the open auger access inleta condition which occurred when the grates were removed was an open and obvious condition. Buckeye had no reason to believe that subsequent vendees would not discover the risk involved.
In Ford v. Goffstein Realty, Inc., 687 S.W.2d 195 (Mo.App.1984), the Court appears to have adopted the general rule set forth by the Restatement:
[I]t seems to be well settled in this state and in other jurisdictions that, absent an express agreement to the contrary, the seller of real estate cannot be held liable for defective condition of the premises.... A purchaser of real estate, other than a newly constructed home, has no cause of action in negligence against its vendor.
Id. at 197. There was no agreement to the contrary in this case and the plaintiff cannot prevail even if one recognizes the exception to the rule set forth in § 353 of the Restatement.[4]

Summary.
The Court believes that the facts adduced to this point in the case and applicable Missouri law yield the conclusion that it would be a substantial miscarriage of justice to allow recovery against any of the defendants after so long a lapse of time since their involvement with the Ristine facility. Had they acted only months before plaintiff's injuryrather than decades agoit would still be highly debatable as to whether their actions fell below the standards of conduct recognized in this state for product manufacturers. Summary judgment will be entered in favor of all the remaining defendants.
NOTES
[1] As is apparent, the sale was an isolated transaction not in the ordinary course of Buckeye's business.
[2] The Court does not mean to imply that plaintiff was substantially at fault with regard to his accident. It appears that it was his employer that is largely to blame for the dangerous environment in which it required its employees to work. The plaintiff has not brought suit against the employer, however, undoubtedly because of the Missouri Workers' Compensation statute which normally bars any suit for damages arising from job-related injury against an employer by an employee.
[3] In addition, Procter & Gamble's mere ownership interest in defendant Buckeye is not enough, under the facts presented, to find liability based on its parent/subsidiary relationship. See Phil Crowley Steel Corp. v. Sharon Steel Corp., 702 F.2d 719, 722 (8th Cir.1983). Plaintiff has not pleaded alter ego liability against this defendant and it would not be possible to hold it liable on this basis given the claims advanced in the Second Amended Complaint. Since Buckeye has been found blameless, however, the question of Procter & Gamble's liability is a moot point.
[4] Section 452 of the Restatement recognizes that a significant lapse of time between the actor's negligent conduct and the harm can shift the duty to prevent such harm from the actor to a third party. The Court feels strongly that the circumstances here fit squarely within this doctrine.