Steven C. COUNTS, Appellant,

v.

MK–FERGUSON COMPANY, an Ohio Corporation; The Buckeye Cellulose Corporation, an Ohio Corporation; The Procter & Gamble Company, an Ohio Corporation, Appellees.

No. 88–1413.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 23, 1988.

Decided Dec. 15, 1988.

Phillip J. Barkett, Jr., Sikeston, Mo., for appellant.

Gary Mayes, St. Louis, Mo. and David G. Ott, Clayton, Mo., for appellees.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Steven C. Counts brought this personal injury suit against MK–Ferguson Company (Ferguson), The Buckeye Cellulose Corp. (Buckeye), and The Procter & Gamble Company (P & G) to recover for injuries he received when his leg became entangled in an underground screw auger. The district court[1] granted the defendants' motion for summary judgment and Counts appealed. For the reasons discussed below, we affirm.

## I. Background

Counts was injured on August 3, 1984, while working in a grain storage building owned by his employer, the E.B. Gee Company (Gee). A screw auger running beneath the building's floor was used to remove grain from the building. Grain was introduced into the auger via a series of access holes in the building's floor. Gravity would cause most of the grain to flow unassisted into the access holes. After a certain point in the removal process, how-

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

ever, workers would have to enter the building and move the remaining grain to the access holes. Counts was operating a portable sweep auger for this purpose when he slipped on loose grain. His right leg entered an access hole and became entangled in the auger. His leg was injured so severely that it had to be amputated below the knee.

The building in which Counts was working was part of a larger grain storage and refining facility located in Ristine, Missouri (the Ristine facility). On or about December 30, 1946, Buckeye's predecessor in interest bought the Ristine facility from Southeast Oil Mill, Inc. (Southeast). Prior to the sale, Southeast had erected five quonset-hut grain storage buildings, including the one in which Counts was injured. Because not all aspects of the facility's construction were complete, Buckeye contracted with Ferguson to complete the project.

P & G is Buckeye's corporate parent. William Jaques was a member of a P & G engineering group that provided engineering services to P & G and its subsidiaries. Serving in that capacity, Jaques supervised Ferguson's work on the Ristine facility.

The auger access holes were eleven inches by twelve inches. Each was equipped with a steel slide plate, which regulated the flow of grain into the auger tunnel. The slide plate, when not opened completely, also served as safety device by preventing complete exposure of the auger. A removable steel guard grate provided additional safety when placed over the auger access hole. At the time of Counts' accident, the slide plate was completely opened and no guard grates were in place over any of the holes.

The design of the underground auger system was completed prior to the sale of the facility to Buckeye, and a company in Texas manufactured the screw augers. For purposes of this appeal we will assume, as the district court did, that Ferguson installed the screw auger that injured Counts.

The Ristine facility began operations in February of 1947. In 1958, Buckeye sold the facility to Ralston Purina. By 1962 the guard grates were missing, and a Ralston Purina employee who stepped into an access hole severely injured his leg. Ralston Purina thereafter fabricated new guard grates to cover the access holes. The Ristine facility changed hands several more times prior to its acquisition by Gee on February 24, 1982.

Counts prevailed in a workers' compensation suit against Gee and then brought this action against Ferguson, Buckeye, and P & G. Counts seeks recovery under theories of negligent construction, negligent supervision, and strict products liability. The gravamen of his complaint is that the access holes should have been equipped with permanent rather than removable guard grates. The district court entered summary judgment in favor of all the defendants, *see Counts v. MK–Ferguson Co.*, 680 F.Supp. 1343, 1348 (E.D.Mo.1988), and this appeal followed. We affirm.

## II. Discussion

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As we recently stated:

[T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, "[to] point[ ] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*City of Mt. Pleasant v. Associated Elec. Coop.,* 838 F.2d 268, 273–74 (8th Cir.1988) (citations omitted) (brackets in original).

For reversal, Counts first argues that the district court erred in granting Ferguson and P & G summary judgment on the negligence claims. He contends that Ferguson is liable for negligently constructing the underground auger system and that P & G is liable for negligently supervising that construction. Counts' second argument is that both defendants are liable under strict products liability. He asserts that Ferguson supplied and installed a defective auger system and that P & G provided defective engineering and supervisory services. Counts does not pursue any claim against Buckeye on appeal. Although Ferguson and P & G assert several grounds for affirmance of the district court's judgment, we will address only those necessary to the resolution of this case.

### A. *Negligence*

■ Under Missouri law, "[a]fter the owner accepts a structure, the general rule is that a general contractor is not liable to persons with whom he did not contract." *Honey v. Barnes Hosp.,* 708 S.W.2d 686, 700 (Mo.Ct.App.1986); *see Begley v. Adaber Realty & Inv. Co.,* 358 S.W.2d 785, 791 (Mo.1962); *Chubb Group of Ins. Cos. v. C.F. Murphy & Assocs.,* 656 S.W.2d 766, 775 (Mo.Ct.App.1983). Buckeye accepted the finished Ristine facility in late 1947 or early 1948. Counts' negligence claim therefore must fail unless he can make out an exception to this general rule. He relies on an exception to the acceptance rule that holds a contractor liable when

> the structure was so defectively constructed as to be essentially and imminently dangerous to the safety of others; the defects are so hidden and concealed that a reasonably careful inspection would not have disclosed them, and these things are known to the defendants but not to those who accepted them.

*Begley,* 358 S.W.2d at 791.

The deposition testimony clearly established that the lack of permanent guards over the access holes was open and obvious, rather than hidden. Buckeye knew the grates were removable. Gee knew of the condition because no grates, removable or permanent, were in use at the time Counts was injured. Once the defendants demonstrated to the district court that the record does not disclose a genuine dispute on this fact, the burden shifted to Counts to show specific facts that present a triable issue of whether the absence of permanent grates was a hidden defect. *City of Mt. Pleasant,* 838 F.2d at 273–74. Counts failed to establish the existence of a genuine dispute on that issue. Counts thus failed to make out an exception to the acceptance rule, and summary judgment was properly granted.

### B. *Products Liability*

■ Counts next argues that the district court erred in granting summary judgment on Counts' strict products liability claims against Ferguson and P & G. The district court relied on two recent Missouri cases analyzing the applicability of strict products liability to construction contractors and concluded that Ferguson and P & G were not strictly liable. We agree with this application of Missouri law.

In *Chubb Group of Insurance Cos. v. C.F. Murphy & Associates,* 656 S.W.2d 766 (Mo.Ct.App.1983), several parties involved in the design and construction of Kemper Arena were sued when its roof collapsed. After analyzing the policy considerations underlying the doctrine of strict products liability, the court concluded that "[t]he underlying consumer protection principles of strict liability simply do not appear to be applicable to the constructors of a large commercial building built for a particular client presumably under contract with that client." *Id.* at 780. Although the court found strict liability potentially applicable to the providers of steel beams and bolts used in the building, it held that the plaintiff had no cause of action against the construction supervisor/architect, the general contractor, and the consulting structural engineers. *Id.* at 781.

*Hunt v. Guarantee Electrical Co.,* 667 S.W.2d 9 (Mo.Ct.App.1984), involved a contractor hired to, among other things, furnish replacement materials and supplies to a production plant. The contractor installed an automatic timer that activated an agitator inside a mix tank. Part of the installation involved integrating the timer into the existing electrical control panel. A worker was killed when the agitator automatically activated while he was in the tank. In affirming a directed verdict for the defendant, the court wrote:

> Absent proof defendant designed, assembled, and sold the system to Purex in the course of its business, plaintiffs' proof goes only to showing defendant installed an automatic timer pursuant to its contract to provide the services of electricians. The policy reasons justifying imposition of strict tort liability are not present in this case where defendant rendered professional services in installing a timer.

*Id.* at 12.

Under *Chubb Group* and *Hunt,* Counts has no strict liability cause of action against Ferguson as the installer of the auger or against P & G as the supplier of engineering services. Counts asserts, however, that he has produced evidence that Ferguson supplied the underground screw auger. Thus, he argues, this case is distinguishable from *Chubb Group* and *Hunt.* We disagree, because Counts has produced insufficient evidence to demonstrate the existence of a genuine dispute on the issue of whether Ferguson supplied the auger.[2]

Counts relies on the fact that Ferguson's contract with P & G was on a cost-plus basis. Considering the stage at which Ferguson became involved in the construction of the Ristine facility, however, we fail to see how the existence of a cost-plus contract gives rise to a genuine dispute on whether Ferguson in fact supplied the auger that we have assumed it installed. Ferguson therefore was entitled to summary judgment on Counts' strict liability claims.

## III. Conclusion

The judgment is affirmed.

---

2. We express no opinion on whether Counts would have a strict liability cause of action against Ferguson if it had supplied the auger.