**Mary Jane BOERNER and Henry W. Boerner, Plaintiffs**

v.

**BROWN & WILLIAMSON TOBACCO COMPANY, Defendant.**

**No. LR–C–98–427.**

United States District Court, E.D. Arkansas, Western Division.

Oct. 7, 1999.

See also, 121 F.Supp.2d 1252.

Gary L. Eubanks, William G. Holt, James G. Schulze, Gary Eubanks & Associates, Little Rock, AR, Norwood S. Wilner and Stephanie J. Franda Hartley, Spohrer, Wilner, Maxwell & Matthews, Jacksonville, FL, for Plaintiffs.

Kevin A. Crass, Jonann Coniglio Fleischauer, Friday, Eldredge & Clark, Little Rock, AR, Frank C. Woodside III, Michael J. Suffern, Dinsmore & Shohl, Cincinnati, OH, Bruce G. Sheffler, Gregory Loss, Thomas Riley Joseph G. Falcone, Chadbourne & Parke, New York City, for Defendant.

## ORDER

MOODY, District Judge.

Before the Court are defendant's Motion to Dismiss and Motion for Summary Judgment.[1] The plaintiffs have responded to both motions and the Court has heard oral arguments. After careful consideration of the papers and arguments and for the reasons stated below, defendant's motions are granted in part and denied in part.

Plaintiffs, Mary Jane Boerner and Henry W. Boerner, her husband, filed suit on June 19, 1998, against defendant Brown & Williamson Tobacco Company seeking compensatory and punitive damages for personal injuries and loss of consortium. In the complaint, plaintiffs allege that Mary Jane Boerner became addicted to

---

1. A motion to dismiss will be treated as motion for summary judgment, where several exhibits were submitted with the motion and the district court provided plaintiff the opportunity to submit additional material on issue presented. Fed.R.Civ.Proc. 12(b) and 56(c). In the instant case, defendant presented the same arguments in its Motion for Summary Judgment as were presented in the Motion to Dismiss. Plaintiffs have responded to both motions. Thus, the Court will treat the pending Motion to Dismiss as a Motion for Summary Judgment (# 11).

cigarettes and eventually developed lung cancer and emphysema., Plaintiffs seek recovery from defendant under the theories of fraud and deceit (Count I), negligence (Count II), and strict liability (Count III). Mary Jane Boerner died in August of 1999 of what will be claimed to be a progression of her cancer. Plaintiffs' counsel have expressed their intention to amend the complaint to allege a wrongful death action but agree that such an amendment will not alter the liability theories.

Defendant argues that it is entitled to summary judgment for the following reasons:

(1) On the strict liability claim, because Arkansas law requires that a product be "unreasonably dangerous" before liability can be imposed on a manufacturer, and the Supreme Court of Arkansas has adopted comment *i* to § 402A of the *Restatement (Second) of Torts* (1965) [*hereinafter* "comment *i*" and " § 402A," respectively], which expressly states that tobacco is not unreasonably dangerous, and because the "common knowledge" of the hazards of smoking by definition preclude cigarettes from being a "unreasonably dangerous" product;

(2) On the negligence claim, because a product which is not "unreasonably dangerous" cannot as a matter of law pose an "unreasonable risk" (as required for a viable negligence claim against a manufacturer);

(3) On the fraud claim, because there was no reliance by plaintiff Mary Jane Boerner on any representations made by defendant; and

(4) On all claims after 1969, because they are based on alleged failures to warn and are therefore preempted by the Federal Cigarette Labeling and Advertising Act of 1965, as amended by the Public Health Cigarette Smoking Act of 1969 ("Labeling Act"), 15 U.S.C. § 1334(b).

Plaintiffs respond to these arguments as follows:

The claim of strict liability for failure to warn that cigarettes are: "unreasonably dangerous" is valid because the risks of smoking were not "common knowledge" at the time Mary Jane Boerner became addicted and because these cigarettes were not the safe variety of tobacco mentioned in Comment i.

Plaintiffs also assert a strict liability claim of defective design based on defendant's failure to remove carcinogens from its cigarettes and in increasing nicotine levels to make the product addictive.

The negligence claim is valid because cigarettes are unreasonably dangerous and do pose an unreasonable risk of harm.

The fraud claim is valid because plaintiffs have established reliance upon defendant's fraud on the public health community, the United States government and society as a whole.

Plaintiff asserts that the post–1969 claims for failure to warn are not preempted because defendant has negligently misrepresented the truth about the harmful effects of tobacco; hidden the fact that smoking causes lung cancer and emphysema; and manipulated nicotine levels in its products to make smoking addictive.

Plaintiffs also assert claims based on a conspiracy by defendant with other cigarette manufacturers to commit fraud on the consuming public.

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds. Fed.R.Civ.P. 56. The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden is on the moving party to show that the record does not disclose a genuine dispute on a material fact. *Counts v. MK–Ferguson Co.* [CCH Products Liability Reports ¶ 12,002], 862 F.2d 1338 (8th Cir.1988).

## FACTS

Mary Jane Boerner began smoking cigarettes in 1945 at the age of 15. She initially smoked Lucky Strikes and then switched to Pall Malls. Both of these brands were manufactured by defendant's predecessor American Tobacco Company.

Mary Jane Boerner claims that she became addicted to cigarette smoking by 1948 and continued smoking until 1981 when she quit on encouragement from her family and the "intervention of God."

On January 4, 1954, the Arkansas Gazette published the *Frank Statement to Cigarette Smokers* ("Frank Statement") listing the American Tobacco Company as a sponsor, and on the same date the Arkansas Democrat published an article about the "Frank Statement" describing the statement as an advertisement.

The "Frank Statement" read:

Recent reports on experiments with mice have given wide publicity to a theory that cigarette smoking is in some way linked with lung cancer in human beings.

Although conducted by doctors of professional standing, these experiments are not regarded as conclusive in the field of cancer research. However, we do not believe that any serious medical research, even though its results are inconclusive, should be disregarded or lightly dismissed.

At the same time, we feel it is in the public interest to call attention to the fact that eminent doctors and research scientists have publicly questioned the claimed significance of these experiments.

Distinguished authorities point out:

1. That medical research of recent years indicated many possible causes of lung cancer.
2. That there is no agreement among the authorities regarding what the cause is.
3. That there is no proof that cigarette smoking is one of the causes.
4. That statistics purporting to link cigarette smoking with the disease could apply with equal force to any one of many other aspects of modern life. Indeed, the validity of the statistics themselves is questioned by numerous scientists.

We accept an interest in people's health as a basic responsibility, paramount to every other consideration in our business. We believe the products we make are not injurious to health. We always have and always will cooperate closely with those whose task it is to safeguard the public health. For more than 300 years, tobacco has given solace, relaxation, and enjoyment to mankind. At one time or another during those years, critics have held it responsible for practically every disease of the human body. One by one these charges have been abandoned for lack of evidence.

Regardless of the record of the past, the fact that cigarette smoking today should even be suspected as a cause of a serious disease is a matter of deep concern to us.

Many people have asked us what we are doing to meet the public's concern aroused by the recent reports. Here is the answer:

1. We are pledging aid and assistance to the research effort into all phases of tobacco use and health. This joint financial aid will, of course, be in addition to what is already being contributed by individual companies.
2. For this purpose, we are establishing a joint industry group consisting initially of the undersigned. This group will be know as TOBACCO INDUSTRY RESEARCH COMMITTEE.
3. In charge of the research activities of the Committee will be a scientist of unimpeachable integrity and national repute. In addition, there will be an Advisory Board of scientists disinterested in the cigarette industry. A group of distinguished men

from medicine, science, and education will be invited to serve on the Board. These scientists will advise the Committee on its research activities.

This statement is being issued because we believe the people are entitled to know where we stand on this matter and what we intend to do about it.

Mary Jane Boerner remembered seeing some Pall Malls advertisements in the early 1950s, but did not personally see or rely on any alleged false statements by American Tobacco Company, including the "Frank Statement". Defendant acquired American Tobacco in 1995 and merged it into Brown & Williams Tobacco Company. Mary Jane Boerner was diagnosed with lung cancer in July of 1996 and died in August of 1999.

I. *Strict Liability Claims from 1945–1969*

Plaintiffs contend they are entitled to pursue a claim of strict liability in tort for failure to warn and defective design for all conduct of the defendant and its predecessor American Tobacco Company from 1945 to the present.

■ To sustain a cause of action for strict liability, it is necessary to prove that the product is in a defective condition which rendered it unreasonably dangerous. Ark.Code Ann. § 16–116–102; *Purina Mills, Inc. v. Askins,* 317 Ark. 58, 875 S.W.2d 843 (1994); *E.I. DuPont de Nemours & Co. v. Dillaha* [CCH Products Liability Reports ¶ 9950], 280 Ark. 477, 659 S.W.2d 756 (1983).

The Arkansas law is patterned after the *Restatement (Second) of Torts* § 402A, the comments to which define "unreasonably dangerous" as requiring something beyond that contemplated by the ordinary and reasonable buyer, taking into account any special knowledge of the buyer concerning the characteristics, propensities, risks, dangers, and proper and improper uses of the product. However, as to a minor, "unreasonably dangerous" means that a product is dangerous to an extent beyond which would be contemplated by an ordinary and reasonably careful minor considering his age and intelligence. Ark.Code Ann. § 16–116–102(7).

■ Defendant argues that plaintiffs' claims under strict liability for failure to warn fail because the risk of smoking cigarettes has been common knowledge to the consuming public at all relevant times in this case. Defendant says that, since the risk was commonly known, cigarettes cannot meet the definition of an unreasonably dangerous product.

This position has been adopted by the Sixth Circuit Court of Appeals in *Roysdon v. R.J. Reynolds Tobacco Co.* [CCH Products Liability Reports ¶ 11,823], 849 F.2d 230 (6th Cir.1988), applying Tennessee law and the Fifth Circuit Court of Appeals case in *Sanchez v. Liggett & Myers, Inc.* [CCH Products Liability Reports ¶ 15,610], 187 F.3d 486 (5th Cir.1999), applying Texas law. *See also American Tobacco Co. v. Grinnell* [CCH Products Liability Reports ¶ 14,992], 951 S.W.2d 420 (1997) (Texas Supreme Court held that while general health dangers were common knowledge to general public, the danger of addiction was not known); *Allgood v. R.J. Reynolds Tobacco Co.* [CCH Products Liability Reports ¶ 14,656], 80 F.3d 168, 172 (5th Cir. 1996), *cert. denied,* 519 U.S. 930, 117 S.Ct. 300, 136 L.Ed.2d 218 (1996).

These cases are persuasive but are not controlling on this issue and, in large part, can be distinguished from the instant case. The Court finds that common knowledge is not a defense to strict liability claims for failure to warn from 1945 to 1969 for the following reasons.

There seems to be no clear consensus among the reported cases as to whether the dangers of cigarette smoking are common knowledge or if they are, when they became common knowledge.

Here, Mary Jane Boerner started smoking in 1945 and it is contended that she was addicted to cigarettes by 1948. The cases cited by defendant support the posi-

tion that the hazards of smoking were first known in 1952 which was four years after Mary Jane Boerner had become addicted and past the point when she might have been influenced by more forceful warnings.

Second, Mary Jane Boerner was 15 years of age when she started smoking and 18 years of age when she was addicted. Given her age and lack of experience, it is less likely that she would have acquired the same knowledge as her elders. No Court has addressed what was "common knowledge" to a minor in the time frame from 1945 to 1948.

Finally, by means of the "Frank Statement" and other dissemination through the media, American Tobacco Company was making statements that the scientific community had not established a causal link between cancer and smoking. It would be unfair for American Tobacco Company or its successor to take the position that smoking was not hazardous, supported by scientific opinion well into the 1960s, and then contend that the public's common knowledge was to the contrary when sued under a failure-to-warn theory.

The Court for the Western District of Kentucky may have said it best in *Hill v. R.J. Reynolds Tobacco Co.* [CCH Products Liability Reports ¶ 15,642], 44 F.Supp.2d 837, 844 (1999):

> The Court is simply unwilling to take judicial notice of something as intangible as public knowledge over three decades in the past. The exercise seems inherently speculative and an inappropriate topic for judicial notice.

■ Defendant argues that any failure to warn from 1948 to 1969 could not have been the proximate cause of any harmful effects from smoking because Mary Jane Boerner was addicted to smoking by 1948 and would not have heeded even an adequate warning. This argument is inconsistent with the undisputed fact that Mary Jane Boerner was able to stop smoking at the urging of her family and with what she termed "the intervention of God." The Court cannot say as a matter of law that stronger and more urgent warnings might

not have persuaded Mary Jane Boerner to overcome her addiction and quit smoking. That issue will be reserved for the jury and plaintiffs may proceed on a theory of strict liability for failure to warn from 1945 to 1969.

■ Defendant also contends that, from 1945 to 1948, the state of scientific knowledge based on the plaintiffs' own submissions from Dr. Churchill was such that there were no demonstrable hazards from smoking against which the defendants could warn. Defendant, however, has cited numerous instances well before 1945 suggesting that cigarette smoking is harmful to health and the Court finds there to be a material issue of disputed fact on this issue.

■ Plaintiffs also assert a strict liability claim based on a design defect created by defendant's alteration of the tobacco to increase the amount of nicotine it contains and thus make it more addictive. Defendant contends this claim is absolutely barred because the Arkansas Supreme Court has adopted the *Restatement (Second) of Torts* containing Comment *i* and the consumer expectation test. *See Purina Mills, Inc. v. Askins,* 317 Ark. 58, 875 S.W.2d 843, 847 (1994).

Comment *i* states "good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous." Comment *i* to § 402A of the *Restatement (Second) of Torts* (1965). Under the "consumer expectation" test, as set forth in *Purina,* a product is "unreasonably dangerous" if it requires something beyond that contemplated by the ordinary and reasonable buyer, taking into account any special knowledge of the buyer concerning the characteristics, propensities, risks, dangers, and proper and improper uses of the product. *See Purina Mills, Inc. v. Askins,* 875 S.W.2d at 847.

Assuming Comment *i* has been adopted by the Arkansas Courts and it is an abso-

lute bar to recovery under plaintiffs' strict liability theory, disputed facts exist which preclude summary judgment. Comment *i* states that "good tobacco" is not unreasonably dangerous. It is a question of fact as to whether defendant's product was made of good tobacco or if the product contained tobacco which was made "unreasonably dangerous" by the addition of excessive quantities of nicotine. Moreover, Arkansas Courts have rejected the "open and obvious danger" rule as an absolute exception to defective design in strict products liability claims. *See Lockley v. Deere & Co.*, 933 F.2d 1378, 1383 (8th Cir.1991).

## II. *Negligence Claims Before 1969*

■ Under Arkansas law, negligence is defined as the failure to do something that a reasonably careful person would do, or the doing of something that a reasonably careful person would not do, under the circumstances. *Wallace v. Broyles*, 331 Ark. 58, 67, 332 Ark. 189, 961 S.W.2d 712, 715 (1998). The law of negligence requires as essential elements that the plaintiff show that a duty was owed and that the duty was breached which proximately caused injuries. *Young v. Paxton*, 316 Ark. 655, 660, 873 S.W.2d 546, 549 (1994).

■ A manufacturer has a duty to give a reasonable and adequate warning of dangers inherent or reasonably foreseeable in the use of its product for a purpose and in a manner which the manufacturer should reasonably foresee. *See Hergeth, Inc. v. Green* [CCH Products Liability Reports ¶ 11,551], 293 Ark. 119, 123–24, 733 S.W.2d 409, 411 (1987).

■ Defendant relies on the "common knowledge" defense asserting that a product which is by definition not unreasonably dangerous cannot pose a unreasonable risk of harm. Because the Court cannot find as a matter of law that the danger to health of cigarette smoking was common knowledge, this defense must fail and plaintiffs will be allowed to proceed on their negligence theory from 1945 to 1969.

The Court recognizes there is a serious question as to whether Mary Jane Boerner relied on any warnings by American Tobacco Company or others in the tobacco industry making problematical whether any inadequate warning could have been the proximate cause of her injuries or death. The Court will reserve decision on this issue until plaintiffs have completed their proof.

## III. *Fraud and Deceit Claims*

■ Plaintiffs' claim for fraud consists of five elements that must be proved by a preponderance of the evidence: (1) a false representation, usually of a material fact; (2) knowledge or belief by the defendant that the representation is false; (3) intent to induce reliance on the part of the plaintiff; (4) justifiable reliance by the plaintiff; and (5) resulting damage to the plaintiff. *Clark v. Ridgeway*, 323 Ark. 378, 386, 914 S.W.2d 745 (1996).

Plaintiffs assert that the "Frank Statement" to which American Tobacco Company subscribed and the industry's general campaign to convince the public that cancer and cigarette smoking were not connected misrepresented the health risks of smoking to health and government officials who made policy decisions affecting the public, including Mary Jane Boerner. Plaintiffs allege that the Frank Statement's impact on the public lulled Mary Jane Boerner into a false sense of security regarding her health and smoking by promising to safeguard the public health. Plaintiffs also allege that defendant discovered the health risks of tobacco through their research, and fraudulently concealed that information from the public, including Mary Jane Boerner.

■ To survive defendant's Motion for Summary Judgment on the fraud claims, plaintiffs must provide sufficient evidence that Mary Jane Boerner relied upon the alleged misrepresentations. Reliance is an essential element of both affirmative fraud and fraudulent concealment.

Plaintiffs' affidavits and depositions only show that Mary Jane Boerner saw some advertising on television during the time period the alleged misrepresentations were made. There is no proof that Mary Jane Boerner read or directly heard about the "Frank Statement". This evidence falls far short of proving that she actually relied upon that advertising.

Plaintiffs also assert a theory of recovery based upon § 324A(b) of the *Restatement (Second) of Torts*.[2] The theory is that defendant and others assumed a duty to the public when they directed the "Frank Statement" to the public that they would be aware of public health problems and its connection to smoking, and subsequently withheld information and disseminated false information to government health officials and the American Medical Association about smoking and public health resulting in these officials relying upon false information. Thus, plaintiffs argue that defendant breached a duty to the public which caused personal injury to Mary Jane Boerner. This argument is without merit.

Plaintiffs rely on *Wilson v. Rebsamen Ins., Inc.*, 330 Ark. 687, 957 S.W.2d 678 (1997), as authority for the proposition that the Arkansas Supreme Court has adopted *Restatement (Second) of Torts* § 324A. In that case, the Court ruled that an insurance company and its agent acting as an independent consulting firm to perform safety inspections of employers' premises, but which had no authority to implement the safety changes it suggested, owed a duty to a third party employee injured on the job to perform inspections with reasonable care.

This case was decided within the context of whether workers compensation benefits, as an exclusive remedy, should protect an independent consultant to an employer just as it protects the employer against suits by its employees. The case cannot be read as extending a duty to a tobacco company to provide information to the public health community as is claimed here.

Moreover, there is no evidence in this record that the American Medical Association or the public health authorities ever relied on any statements by American Tobacco Company which might have had an impact on Mary Jane Boerner's smoking habits.

Plaintiffs also rely on *In re Orthopedic Bone Screw Products Liability Litigation* [CCH Products Liability Reports ¶ 15,408], 159 F.3d 817 (3d Cir.1998) for the proposition that fraud need not be directed to the actual victim. *Orthopedic Bone* holds that liability exists even when a plaintiff does not hear of the misrepresentation but is injured because some third person relied on the misrepresentation.

*Orthopedic Bone* is distinguishable from the instant case. In *Orthopedic Bone*, there was a duty imposed upon the manufacturer to disclose information to the Food and Drug Administration ("FDA"). Under the Third Circuit's analysis, the plaintiff's doctors, directly, and the plaintiff, indirectly, could have relied upon the FDA's approval process before using the product which caused plaintiffs harm. Here, there is no submission process required of defendant by the FDA as a prerequisite to sale or use of its product and there was no evidence of reliance by the American Medical Association, public health officials, or the public. *Id.*

IV. *Plaintiffs' Claims Based on American Tobacco Company's Conduct After 1969*

Plaintiffs contend that a number of their claims survive the preemption of state law failure-to-warn claim after the passage of

---

2. § 324A(b) states that "One who undertakes ... to render services to another which he should recognize as necessary for the protection of a third person ..., is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if ... (b) he has undertaken to perform a duty owed by the other to the third person ..." *Restatement (Second) of Torts* § 324A(b).

the Labeling Act in 1969. 15 U.S.C. § 1334.

■■■ The first such claim is for negligent misrepresentation of scientific information about the hazards of smoking. Arkansas has specifically rejected the claim of negligent misrepresentation in *South County, Inc. v. First Western Loan Co.*, 315 Ark. 722, 871 S.W.2d 325 (1994). Thus, even if it survived preemption under the Labeling Act and *Cipollone v. Liggett Group, Inc.* [CCH Products Liability Reports ¶ 13,199], 505 U.S. 504, 522–31, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), plaintiffs have no basis for asserting such a claim in this case.

■■■ The second claim is for fraudulent misrepresentation. An essential element of this claim is reliance. Mary Jane Boerner conceded that she never relied on any representation that could be deemed fraudulent from American Tobacco Company while she smoked and this claim also fails.

The remaining claims are controlled by the provisions of the Labeling Act and the ruling in *Cipollone*. The Labeling Act mandates uniform warning labels on packages of cigarettes. The purpose of the Labeling Act is to adequately inform the public of the dangers of cigarette smoking while simultaneously protecting commerce and the national economy. See 15 U.S.C. § 1331. The Labeling Act at 15 U.S.C. § 1334(b) contains an express preemption provision which reads:

> No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

*Cipollone* held that any claim based upon a violation of a state law for failure to warn against cigarette manufacturers was preempted by the Labeling Act to the extent it required showing that manufacturers' post–1969 advertising or promotions should have included additional, or more clearly stated, warnings; and state law failure-to-warn claims against cigarette manufacturers were not preempted by the Labeling Act to the extent they relied solely on manufacturer's testing or research practices or other actions unrelated to advertising or promotion. *Cipollone* at 530, 112 S.Ct. 2608. On the fraud claims, *Cipollone* held that (1) fraudulent misrepresentation claims against cigarette manufacturers for allegedly neutralizing effect of federally mandated warning labels through their advertising, which claims were predicated on state law prohibition against statements in advertising and promotional materials that tend to minimize health hazards associated with smoking, were preempted; (2) fraudulent misrepresentation claims based upon state law duty not to make false statements of material fact or to conceal such facts were not preempted by the Labeling Act even if the duties arose with respect to advertising and promotions; and (3) state law claims for allegedly conspiring to misrepresent or conceal material facts concerning health hazards of smoking were not preempted by the Labeling Act.

■■■ In the instant case, plaintiffs' post–1969 negligence and strict liability claims based upon a failure to warn to the extent they are based upon allegations that defendant's post–1969 advertising or promotions should have included additional or more clearly stated warnings are preempted. To the extent they are based upon allegations that are based solely on defendant's testing or research practices or other activities unrelated to advertisements or promotions, they are not preempted.

Defendant's Motion for Summary Judgment is granted on plaintiff's post–1969 negligence and strict liability claims based upon defendant's duty to warn by adding or including additional information (1) about the addictive nature of nicotine, (2) that defendant had manipulated nicotine levels in its tobacco products; and (3) that cigarettes caused lung cancer and emphysema to their advertising or promotions. Defendant's Motion for Summary Judgment is denied on plaintiffs' negligence and

strict liability claims based upon inadequate testing and research and plaintiffs' defective design and manufacturing claims or other actions unrelated to advertising or promotion.

 In addition to the reasons previously given for dismissing plaintiffs' fraud claim, the same reasoning contained in *Cipollone* would be applicable to plaintiffs' post–1969 fraud claims. Thus, preemption would apply to fraudulent concealment allegations to the extent such a claim alleged neutralization of warnings or non-disclosure of information in cigarette advertising or promotion. *Cipollone*, 505 U.S. at 526–29, 112 S.Ct. 2608. Common-law fraud claims not preempted after *Cipollone* are those based upon allegations that defendant concealed material facts through channels of communication other than advertising or promotion, i.e., duty to disclose material facts about smoking and health to an administrative agency and fraudulent-misrepresentation claims made in advertisements.

## V. *Conspiracy to Commit Fraud*

Plaintiffs allege conspiracy in each of their causes of action but the allegations only support a conspiracy to commit fraud.

 Under Arkansas law, a civil conspiracy is a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive, or immoral, by unlawful, oppressive or immoral means, to the injury of another. *See Chalmers v. Toyota Motor Sales,* 326 Ark. 895, 905, 935 S.W.2d 258, 264 (1996). Such a conspiracy is not actionable in and of itself, but recovery may be had for damages caused by acts committed pursuant to the conspiracy. *See Mason v. Funderburk,* 247 Ark. 521, 529, 446 S.W.2d 543, 548 (1969); *Ragsdale v. Watson,* 201 F.Supp. 495, 501–02 (W.D.Ark.1962).

 The pre- and post–1969 conspiracy to commit fraud claims fail as there are no surviving underlying acts upon which to base the conspiracy. Alternatively, under the Labeling Act, a conspiracy claim based upon post–1969 fraud relative to defendant's concealment of allegations to the extent such a claim alleged neutralization of warnings or non-disclosure of information in cigarette advertising or promotion would be preempted. *Cipollone,* 505 U.S. at 526–29, 112 S.Ct. 2608. Conversely, a conspiracy to commit fraud based upon common-law fraud claims based upon allegations that defendant concealed material facts through channels of communication other than advertising or promotion, *i.e.,* duty to disclose material facts about smoking and health to an administrative agency and fraudulent-misrepresentation claims made in advertisements would not be preempted.

## VI. *Conclusion*

Defendant's Motion for Summary Judgment on the fraud and deceit claim (Count I of the complaint) is granted.

Defendant's Motion for Summary Judgment on the negligence (Count II of the complaint) and strict liability (Count III of the complaint) as it applies to warnings from 1945 to 1969 is denied.

Defendant's Motion for Summary Judgment is granted on all post–1969 failure-to-warn claims to the extent they are based upon allegations that the manufacturer should have included additional, or more clearly stated warnings, and all claims based upon fraud, deceit, or misrepresentation, including the conspiracy claim (# 11 and # 22).

Defendant's Motion for Summary Judgment is denied on post–1969 strict liability and negligence claims based exclusively on alleged inadequate testing and research and design and manufacturing defects (# 11 and # 22).[3]

3. Henry W. Boerner's claims for loss of consortium are derivative of Mary Jane Boerner

and the same grant or denial of a motion for summary judgment on her claims would correspond to an identical grant or denial on his claims.