68 F.3d 276
 ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Plaintiff-Appellee,
v.
Austin Ray PIERCE, Intervenor-Plaintiff Appellee,
v.
William L. ROBINSON, Defendant,
Triple B Wood Dealer, a partnership composed of: Troy
Bradley and Larry Bradley; Troy Bradley, Sole Proprietor of
Bradley Pulpwood Contractors, doing business as Bradley
Pulpwood Contractors, Defendants-Appellants.
TRIPLE B WOOD DEALER, a partnership composed of: Larry
Bradley and Troy Bradley, Counter-Claimant,
v.
ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Counter-Defendant,
Bradley Pulpwood Contractors; Southern Pacific
Transportation Company, Defendants.
Worthen National Bank of Northwest Arkansas, Garnishee,
Simmons First National Bank, Garnishee.
 No. 94-3973.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 16, 1995.
Decided Oct. 24, 1995.
Rehearing Denied Dec. 8, 1995.
 
 1
 Wiliam David Duke, argued, Little Rock, Arkansas (Gary M. Draper and Sandra C. Bradshaw, on the brief), for appellant.
 
 
 2
 Jerome Joseph Schlichter, argued, St. Louis, Missouri (Steven L. Groves, on the brief), for appellee Pierce.
 
 
 3
 John Gardner Lile III, argued, Little Rock, Arkansas (Troy A. Price, on the brief), for St. Louis Railway.
 
 
 4
 Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and KYLE,* District Judge.
 
 
 5
 KYLE, District Judge.
 
 
 6
 On June 4, 1992, a truck and lowboy semitrailer, owned and operated by Appellants, became lodged at and on a railroad crossing in Kingsland, Arkansas. The crossing is located within a curve on the railroad track and is banked; that is, it is uneven--with one track being several inches higher than the other. This particular crossing is posted to warn motorists that the tracks are uneven. Appellants were aware that the crossing was uneven, knew that the lowboy semitrailer, which was loaded with a bulldozer, had minimal clearance for the crossing, and considered an alternative route to avoid crossing the track at this location. In an attempt to minimize the risk of crossing, Appellants' employees left the truck to observe the lowboy attempt the crossing. Believing that there was sufficient clearance, the lowboy progressed to a point where it "hung" on one of the tracks. Attempts to dislodge the lowboy by pushing and rocking the truck and tractor across the track were futile. While these efforts were underway, a train was heard approaching the crossing. Efforts to warn the train of the situation and to move the truck (and trailer) off the track, were unavailing; a collision occurred. The train, the truck, trailer, and tractor, as well as the train's engineer, sustained injuries. This litigation followed.
 
 
 7
 The St. Louis Southwestern Railway Company ("Railway") initiated this action against Appellants seeking monetary damages for its derailed train and damaged track. Appellants denied any negligence on their part and interposed a counterclaim seeking monetary damages to their own trailer and equipment. The locomotive engineer intervened and asserted claims under the Federal Employer's Liability Act (FELA) against the Railway and for negligence against Appellants.
 
 
 8
 The matter was tried to a jury which returned a verdict against Appellants and in favor of the locomotive engineer in the amount of $925,000 for personal injuries and in favor of the Railway in the amount of $250,000 for property damage. The jury also found in favor of the Railway on the engineer's FELA claims. This appeal followed; for the reasons hereinafter set forth, we affirm.
 
 
 9
 Appellants raise several issues on appeal, only two of which require discussion in this Opinion:
 
 
 10
 I. The Arkansas Heavy Equipment Statute.
 
 The statute at issue provides:
 
 11
 27-51-705 Moving heavy equipment at crossings
 
 
 12
 (a) No person shall operate or move any crawler-type tractor, steam shovel, derrick, roller, or any equipment or structure having a normal operating speed of up to ten (10) miles per hour or a vertical body or load clearance of less than one-half inch ( 1/2"') per foot of the distance between any two adjacent axles, or, in any event, of less than nine inches (9"') measured above the level surface of a roadway, upon or across any tracks at a railroad grade crossing without first complying with this section.
 
 
 13
 (b) Notice of any intended crossing shall be given to a station agent of the railroad, and a reasonable time shall be given to the railroad to provide protection at the crossing.
 
 
 14
 Over the timely objection of Appellants, the District Court[1] instructed the jury regarding the statute, advising them that "a violation of the statute, although not necessarily negligence, is evidence of negligence to be considered by you along with all of the other facts and circumstances of this case." Asserting that such an instruction was outcome determinative, Appellants urge us to reverse the jury's verdict and remand for a new trial.
 
 
 15
 Appellants argue here, as they did below, that the statute was not applicable to the case because they were operating a legally licensed tractor-trailer and the statute is aimed at the movement of "crawler-type tractors" and other non-licensed equipment. We have reviewed the statute, its legislative history and those cases which have construed it; we conclude that the District Court properly submitted the matter to the jury. In our view, the language of the statute is plain and unambiguous--"any equipment" means, certainly in the context of the case involving a truck and lowboy semitrailer, just what it says--"any equipment"--and the lowboy semitrailer involved here comes within that broad definition. We find it unnecessary to employ maxims of construction (ejusdem generis, expressio unius est exclusio alterius ) as Appellants urge.
 
 
 16
 As a further objection to the instruction, Appellants argue that there was "no credible evidence that Appellants' semitrailer had a load clearance of less than one-half inch per foot of the distance between any two adjacent axles, measured above the level surface of the roadway." Again, our review of the record satisfies us that the evidence was sufficient to submit the issue to the jury. Certainly the jury was not required to reach such a conclusion, but the issue before us is the sufficiency of the evidence, and we find no basis for determining that the evidence was not sufficient.
 
 
 17
 II. Preemption.
 
 
 18
 Appellants had claimed that the train was operating at an excessive speed for the conditions existing at the time of the accident. The evidence showed its speed to be 49-50 miles per hour at the time of collision. The track where the accident occurred had a Federal Safety Act speed limit of 60 miles per hour. However, the Railway had a self-imposed speed limit of 45 miles per hour, a speed which was admittedly exceeded at the time of the accident.
 
 
 19
 Appellants, in support of their claim that the train was operating at an excessive speed for conditions then existing, intended to introduce evidence of the Railway's self-imposed limitation of 45 miles per hour. To prevent this, the Railway filed a pre-trial motion for partial summary judgment on that issue. The District Court, relying on CSX Transportation, Inc. v. Easterwood, --- U.S. ----, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), concluded that the excessive speed claim was preempted by 45 U.S.C. Sec. 434, and thus eliminated from the jury's consideration any negligence based upon the Railway's "violation" of its own internal operating procedures involving the speed limitations. Appellants' attempts to distinguish Easterwood are unavailing. Easterwood stated that "in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of the sort which [plaintiff] seeks to impose on [defendant]." Id. at ----, 113 S.Ct. at 1742. We review de novo a District Court's summary judgment determinations. Maitland v. University of Minnesota, 43 F.3d 357, 360 (8th Cir.1994). In the case before us, we believe that the District Court properly granted the Railway's motion for partial summary judgment. Preemption, under the facts presented here, is clear not only because of the dictates of Easterwood, but decisions of other courts as well. See Wright v. Illinois Cent. R.R. Co., 868 F.Supp. 183, 186 (S.D.Miss.1994) (internal policies of railroad which are inconsistent with the controlling federal speed regulations are preempted); Williams v. Burlington N. R.R. Co., 849 F.Supp. 682 (E.D.Ark.1994) (excessive speed claim preempted); Elrod v. Burlington N. R.R. Co., 1993 WL 667635, at * 2 (E.D.Ark.1993) (excessive speed claim preempted), aff'd, 68 F.3d 241 (8th Cir.1995); Bowman v. Norfolk S. Ry. Co., 832 F.Supp. 1014, 1017 (D.S.C.1993) (evidence of railroad's internal policies about train speed deemed irrelevant); Watson v. Rail Link, Inc., 826 F.Supp. 487, 490 (S.D.Ga.1993) (court granted summary judgment for railroad on plaintiff's excessive speed claim); Eldridge v. Missouri Pac. R.R., 832 F.Supp. 328, 330 (E.D.Okla.1993) (speed claim preempted).
 
 Conclusion
 
 20
 We have thoroughly reviewed the entire record and are satisfied that the jury was fully and properly instructed with respect to the issues before it and that the verdict is amply supported by the evidence. We do not believe any useful purpose would be served by a review of other issues raised by Appellants. The judgment of the District Court is affirmed.
 
 
 
 *
 The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas