**Charles and Diann SIPES, Plaintiffs**

**v.**

**UNION PACIFIC RAILROAD COMPANY, Defendant.**

**Case No. LR–C–00–617.**

United States District Court, E.D. Arkansas, Western Division.

Feb. 11, 2002.

---

Patrick J. Hagerty, Gray, Ritter & Graham, P.C., St. Louis, MO, Ralph C. Hamner, Jr., Gray, Ritter & Graham, P.C., North Little Rock, AR, for Plaintiffs.

William H. Sutton, Scott H. Tucker, Joseph Patrick McKay, Friday, Eldredge & Clark Regions Center, for Defendant.

### *ORDER*

JAMES M. MOODY, District Judge.

This case arises from a tram-car collision at the State Highway 163 grade crossing in Jonesboro, Arkansas, on March 2, 1996. A train operated by Defendant Union Pacific Railroad (Union Pacific) collided with a car operated by Charles Sipes. The impact resulted in the death of Faith Sipes, a passenger in the Sipes vehicle. This is an action for wrongful death arising out of that collision. Union Pacific has filed a Motion for Partial Summary Judgment in which it contends that Plaintiffs' claim that the train was traveling at an excessive speed is preempted by federal law and should be dismissed. Plaintiff has responded to the motion. In addition, the Court requested supplemental briefing from the parties to clarify certain issues. The issue presented has been thoroughly briefed and is ripe for decision.

For the reasons stated below, the Court finds that Plaintiff's excessive speed claim is preempted by the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20106, and 49 C.F.R. § 213.9(a), and grants Defendant's motion.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart,* 813 F.2d 874 (8th Cir.1987); Fed.R.Civ.P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

The inquiry is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. MK–Ferguson Co.,* 862 F.2d 1338 (8th Cir.1988):

[T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.,* '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339.(quoting *City of Mt. Pleasant v. Associated Elec. Coop.,* 838 F.2d 268, 273–274 (8th Cir.1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### DISCUSSION

Federal regulations promulgated pursuant to the Federal Railroad Safety Act set maximum allowable operating speeds for

all freight and passenger trains for each class of track on which they travel, based upon the alignment, curvature and other physical characteristics of the track. 49 C.F.R. §§ 213.9(a), 213.51–143. To operate their trains at the maximum speed, railroads are required to maintain the tracks in question to certain standards which vary by track class. For example, a Class 4 track (with a speed limit of sixty miles per hour) must have twelve crossties meeting federal specifications for each thirty-nine foot segment, while a Class 3 track (with a speed limit of 40 miles per hour) need only have eight compliant crossties for each thirty-nine foot segment. *Id.,* § 213.109(c).

In *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 675, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), the United States Supreme Court held that the FSRA regulations "should be understood as covering the subject matter of train speed with respect to track conditions, including the conditions posed by grade crossings," and thus preempt state or common-law tort claims based on excessive train speed. *See also St. Louis Southwestern Ry. Co. v. Pierce,* 68 F.3d 276, 278 (8th Cir.1995). Defendant argues, based on *CSX Transp.,* that Plaintiff's excessive speed claim is preempted because the applicable speed limit was sixty miles per hour and the train was traveling no more than 60 miles per hour when the incident occurred.

To save their excessive speed claim, Plaintiffs must create a fact issue as to whether the tracks in question are Class 3 or Class 4 or whether the train was traveling in excess of 60 m.p.h. at impact. They have failed to do either.

## A. TRACK CLASSIFICATION/SPEED LIMIT

To support its contention that the track in question was designated as Class 4, Defendant offers the Affidavit of Roy Cline, the FRA Railroad Safety Inspector, responsible for monitoring the railroad tracks in question, which cross State Highway 163 in Jonesboro, Arkansas, and are part of the Wynne subdivision. Mr. Cline states that he inspected these tracks every year from 1992–98 and observed that the tracks were being maintained to FRA Class 4 standards. Defendant also offers the affidavit of Phillip Lawson, a Track Inspector employed by Union Pacific, that the tracks "were maintained" to Class 4 track standards on the accident date.

Federal law requires railroads to report all grade crossing accidents to the Federal Railroad Administration (FRA). The report, captioned a "Rail–Highway Grade Crossing Accident/Incident Report," lists the FRA track classification. The railroad reported this accident to the FRA twice. Originally, the railroad reported the tracks in question were Class 3. Within the month, the railroad then filed a "correction" report in which it noted the tracks were Class 4. (Def.'s Exhs. 1 and 3 to Motion for Summary Judgment).

In its first response opposing the motion, Plaintiffs produced "Crossing Inventory Information" sheets which indicated that Union Pacific had described the crossing to the FRA as having a 40 m.p.h. train speed limit from September 28, 1987, until October 21, 1996. Based on these submissions by the railroad, Plaintiff contended that at that date of the accident on March 2, 1996, the tracks were in fact Class 3 track. Plaintiffs also pointed out that Union Pacific provides the timetable speed information to the FRA. Finally, Plaintiffs argued that Union Pacific tailors its self-imposed track classification to the actual speed of the train at the time of an incident.

Union Pacific filed a reply contending that the FRA accident reports and crossing inventories are privileged and inadmis-

sible and should not be considered.[1] Further, Union Pacific argued that the track classification is determined by Union Pacific's published timetables which clearly designate the track as Class 4 on the date of the incident. Union Pacific further pointed out that Plaintiffs had improperly disregarded Roy Cline's affidavit, noting that the FRA inspector alone had the authority to lower the track classification. See 49 C.F.R. § 216.15(a).

After this initial round of briefing, the Court believed it was necessary to find out more about the relationship of the crossing inventory reports and the classification of track. A telephone conference with the parties was held on September 7, 2001. During that hearing, the Court directed the parties to submit supplemental briefing.

On October 12, 2001, Union Pacific submitted its supplemental brief. Therein, Union Pacific provides additional information to place the crossing inventory reports in context. In the mid 1970's, it was recommended by the Department of Transportation (DOT) that a nationwide, uniform inventory of all crossings was needed to facilitate grade crossing safety. Thereafter, the FRA began maintaining a nationwide crossing inventory database. Union Pacific also maintains it owns internal crossing inventory database. (See Affidavit of Clifford Shoemaker).

Union Pacific submits crossing inventory updates of railroad related changes to the FRA and state agencies. Updates are made when there has been any change to any of the railroad related information in the crossing inventory. Such changes would include train count changes, different warning devices, crossing closures, or a change in the authorized train speed. When such changes are made, Union Pacific inputs the data into its crossing inventory database and then forwards the changes to the FRA and state agencies.

Railroads and states do not have access to update the national FRA database.[2] The FRA, typically through contractors, causes the updates to be made. On occasion, Mr. Shoemaker, Union Pacific's Director of Industry and Public Projects for over 32 years, observed a two-year delay between the time updates were submitted by the railroad to the FRA and the time they were posted on the FRA database. Union Pacific states that it reported to the FRA in 1995, prior to this accident, that the maximum train speed for this crossing was 60 m.p.h. (See Affidavit of David Peterson).

Plaintiffs filed their supplemental brief on December 4, 2001. Therein, Plaintiffs attack the affidavit of Mr. Peterson as lacking in foundation and offer deposition testimony of Mr. Peterson to show that prior to the accident at issue in this case, the track in question was last inspected in 1993. From this fact, Plaintiffs argue that the timetable speed in 1993 was 50 m.p.h. Plaintiffs further argue that the FRA was notified of some undefined change to the crossing "sometime after October 1995" and that Peterson and others reviewed the crossing in June 17, 1996, 3 months after the accident at issue in this lawsuit. Thus, relying primarily upon the alleged incon-

---

1. The Court acknowledges that an issue exists concerning whether the crossing inventory reports and accident reports may even be considered. A broad, statutory privilege arguably applies to such documents. *See* 23 U.S.C. § 409 (providing that materials regarding safety of crossing, compiled pursuant to certain federal statutes, are neither discoverable nor admissible, nor may they be "considered for other purposes" in any litigation regarding the crossing location at issue.) The Court finds it unnecessary to resolve this issue for purposes of ruling on the present motion.

2. Plaintiffs apparently obtained the crossing inventory reports from the FRA's website.

sistencies between the crossing inventory reports, Plaintiffs argue that a dispute exists concerning the true track classification and corresponding maximum speed limit.[3]

The Court disagrees. After permitting a full development of these issues, the Court concludes that the apparent inconsistencies between the inventory reports are neither probative nor material. While track classification information happens to be reported in the inventory reports, that is not the primary purpose of the reports. Nor is it determinative as to how a particular stretch of railroad is classified—that is governed by the official timetable published by Union Pacific. *See* discussion *infra.* Further, the evidence indicates that the Railroad had reported to the FRA prior to this accident that the speed limit at the crossing was in fact 60 m.p.h.

Plaintiffs' reliance on inventory reports and other materials ignores the fact that the regulatory scheme recognizes that track classifications are determined by the official timetable which is published by Union Pacific and filed annually with the FRA. *See* 49 C.F.R. § 217.7. Federal regulations cover all aspects of the subject of track classification. *See* 49 C.F.R. §§ 216.15 *et seq.* The regulatory scheme expressly permits railroads to determine the speed at which it wants to operate its trains along a particular stretch of track, and thus, its track classification, but the FRA retains the authority to override the railroad's determination of track classification. Higher track classifications require more stringent maintenance requirements. If tracks are not in compliance with the federal requirements for a particular classification, then the FRA inspector can lower the classification until compliance is attained.

It is undisputed that Union Pacific's published timetable identified the crossing in question as Class 4 track. Mr. Cline, the authorized federal inspector for the tracks in question, inspected the tracks every year from 1992–98. Each year, he concluded that the tracks were being maintained to FRA Class 4 standards. There is no evidence that Mr. Cline or any other FRA inspector, ever downgraded Union Pacific's track classification or found any defects relevant to the March 2,1996, collision in this case. Whether Mr. Cline's assessment was incorrect is immaterial to the preemption issue before the Court, as is whether Union Pacific assigned a lower speed limit on other dates or at other locations. *See Shots v. CSX Transp., Inc.,* 38 F.3d 304, 308 (7th Cir.1994)("The preemptive effect of a safety requirement laid down by the Secretary cannot be challenged in a tort suit by arguing to the Court that he made a mistake—that he should have imposed a more stringent requirement.... To allow this sort of collateral challenge would put the railroad in an impossible position.").

Under the doctrine of preemption, the federal government has taken over the authority to establish the maximum speed limit for particular sections of track. Roy Cline, the authorized federal inspector for the tracks in question, inspected these tracks and concluded that they met federal specifications for Class 4 track between 1992 and 1998. Thus, Plaintiffs are preempted from challenging that classification or that the maximum speed limit was sixty miles per hour. Unless Plaintiffs can show that the train was traveling in excess of sixty miles per hour, no issue of speed remains.

---

**3.** As Union Pacific points out in its reply, Plaintiffs failed to refer to portions of Mr. Peterson's testimony which indicates, that in fact, as of October 11, 1995, Union Pacific had reported a speed of 60 m.p.h. to the FRA at this particular crossing.

**1056**

## B. ACTUAL SPEED OF THE TRAIN

Preemption would not apply if the train was exceeding the speed limit authorized by the track classification. *See Easterwood,* 507 U.S. at 673, 113 S.Ct. 1732. Union Pacific claims that the train was not exceeding the maximum allowable speed of 60 m.p.h. In support, it offers the deposition testimony of the locomotive engineer, Randall Smith, who states that the train was traveling 60 m.p.h. at the time of the accident. The event recorder on board shows the train to have been traveling at 58 m.p.h. at impact and several seconds prior to impact.

Plaintiffs attempt to show that the event recorder's determination of train speed at impact as 58 m.p.h. is unreliable based upon the assertion that the recorded distances are inconsistent with the railroad claims' department's measurements, the Jonesboro Police Officer's measurements, and the engineer's testimony about point of rest. While this might be relevant at trial as to the weight to be afforded the event recorder's speed, it cannot substitute at this summary judgment stage for Plaintiffs' burden to come forward with proof from which a jury could find that the train was in fact traveling in excess of 60 m.p.h. This Plaintiff has failed to do. The engineer testified that the train was traveling 60 m.p.h. upon impact and the event recorder supports this testimony.

Plaintiffs also rely on the deposition testimony of Danny Draper, the signal maintainer on the speed that the maximum train speed at that location is 50 m.p.h. In response, Union Pacific argues that even if the railroad had imposed an internal speed restriction, such internal policies are irrelevant on the preemption issue. The Court agrees. The claim that the train was traveling in excess of the railroad's self-imposed speed limit is preempted by the federal government's approval of maximum speed limit based solely on track classification. *See St. Louis Southwestern Ry. Co. v. Pierce,* 68 F.3d 276 (8th Cir. 1995).

Plaintiffs have failed to satisfy their burden to create a fact question concerning whether the train was traveling in excess of 60 m.p.h. at impact.

## CONCLUSION

For the reasons stated herein,

IT IS THEREFORE ORDERED that Defendant Union Pacific Railroad's Motion for Partial Summary Judgment (Docket No. 13) be, and it is hereby, GRANTED.