# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3543

_____

Jane Tatum,                                        *
                                                   *
            Plaintiff - Appellant,                 *
                                                   *   Appeal from the United States
      v.                                           *   District Court for the Eastern
                                                   *   District of Arkansas.
Arkansas Department of Health,                     *
A Public Body Corporate,                           *
                                                   *
            Defendant - Appellee.                  *

_____

Submitted:  May 12, 2005
     Filed:  June 20, 2005

_____

Before LOKEN, Chief Judge, HANSEN, and MELLOY Circuit Judges.

_____

MELLOY, Circuit Judge.

Jane Tatum ("Tatum") brought this action for hostile work environment sexual harassment and constructive discharge against the Arkansas Department of Health. The jury found for Tatum, and the district court granted judgment as a matter of law to the Arkansas Department of Health. Tatum now appeals. We affirm.

## I. Facts

Drawing all reasonable inferences in favor of the Appellant, the facts are as follows. Tatum worked as a nurse at the Monroe County Health Unit for the

Arkansas Department of Health. Also employed in the Unit was Robert McCuan ("McCuan"). The Arkansas Department of Health tolerated an environment at the Monroe County Health Unit in which sexual jokes, cartoons, and gags were circulated about once every three to six months. The administrator of the unit, Shirley Coburn ("Coburn"), responded to some of these activities by verbally informing employees the conduct was inappropriate. Coburn testified that she did not see these activities as serious and defended her reaction as sufficient. Tatum testified that this conduct that occurred before June 14, 2001 did not offend her.

On June 14, 2001, Tatum entered the workplace break room. She walked to the refrigerator, opened the door, and bent down to remove a beverage. When she rose up and turned around, she noticed that McCuan was behind her. McCuan said, "I want you." He then grabbed Tatum's hand, placed it on his penis, and asked Tatum, "See how hard it is? Doesn't that feel good?" Tatum immediately jerked her hand away and returned to her office. Tatum stated she was in "total shock" and was "embarrassed and basically scared" as a result of the incident. That day, she did not disclose the incident to anyone, including her husband.

On June 15, 2001, Tatum was returning to the office after her lunch break when McCuan approached her in the parking lot. He said, "My wife and granddaughter will be out of town this weekend. Why don't you come on over? I'll been [sic] there all weekend. Just give me a call any time." Tatum responded that she respected her husband and McCuan's wife too much to do what he wanted. She then entered the building.

Later that afternoon, Tatum approached Coburn and complained about McCuan's conduct. Appellee concedes Coburn took no immediate action as a result of the complaint. Five days later, on June 20, 2001, Tatum confronted McCuan about his conduct. She asked Coburn to accompany her when she went to McCuan's office. Tatum entered and asked McCuan to stop harassing her. McCuan rose from his desk

and said, "Get out of my office now." Tatum responded, "Yes, Mack, last week you didn't have a problem with this at all. You didn't have any problems putting your hand on me. I will not be the office whore." Then Tatum left the office. Coburn and McCuan walked out of the office behind her before exiting the building together. McCuan did not harass Tatum further.

Coburn stated to Tatum that Tatum would "have hell to pay" if Tatum proceeded further with the complaint. One week from the date of her original complaint, Tatum realized that Coburn had not taken any action. Tatum notified Cheri Anthes, the group leader for Monroe and Lee counties and Coburn's immediate supervisor, about the incident. The Appellee took another week before it began its investigation.

On June 29, 2001, the Appellee sent Reginald Rogers, counsel for the Arkansas Department of Health, and Phil Davis, the head of the Human Resources Department to investigate the complaint. The two investigators interviewed Tatum and her co-workers, approximately nineteen in all. During the course of the interviews, the investigators received a complaint from Dena Grimes ("Grimes") that McCuan had harassed her as well. Grimes stated that one day recently while she was bent over, filing, McCuan stated that she should not bend over. Grimes interpreted this comment to mean that McCuan was looking at her bottom. She stated that McCuan also came by her office and asked her several personal questions. Grimes stated McCuan's behavior made her uncomfortable and she cried while making the complaint. The investigators confronted McCuan with Grimes' statements and he responded "if it happened it certainly shouldn't have happened." McCuan later apologized to Grimes. Grimes received no further communications about her complaint.

Tatum testified that she was scared of McCuan and that she had to work with him every day. She also testified that she was shunned by her other co-workers as a

result of her complaint. She testified this hostile behavior by co-workers continued until she resigned on September 6, 2001. Even Coburn agreed that other employees gave Tatum the "cold shoulder" after she made her complaint. Tatum contends that the employees behaved this way because they perceived the Appellee was not taking her complaint seriously.

The investigators finished their interviews on July 11, 2001. At the conclusion of the investigation, the investigators did not find that McCuan had engaged in sexual harassment. One investigator testified that he "neither believed nor disbelieved" Tatum because there were no other witnesses to the incidents. The investigators disregarded Grimes' complaint because of lack of corroboration. Tatum did not receive any notification about the progress of the investigation during the time the investigators were working, though she inquired multiple times to Coburn. Tatum was not informed of the outcome of the investigation until September 2001, a month after she had submitted her resignation. McCuan received no discipline for his alleged acts.

## II. Procedure

Tatum brought this action against the Arkansas Department of Health for hostile work environment sexual harassment and constructive discharge. The case was tried in the Eastern District of Arkansas in August 2004. After Tatum presented her evidence, the Arkansas Department of Health moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. The district court took the matter under advisement. The district court also dismissed her constructive discharge claim before submitting the matter to the jury. The jury found for Tatum on the hostile work environment claim and awarded $300,000 in compensatory damages. The district court subsequently granted Arkansas Department of Health's motion for judgment as a matter of law. The district court found that Tatum had failed to show that: (1) the harassment was severe and pervasive enough to alter the term, condition, or privilege of her employment, or (2) the Arkansas Department of Health knew or should have

known that Tatum had been harassed and failed to take prompt and corrective action to end the harassment.

## III. Standard of Review

We review a grant of judgment as a matter of law de novo, drawing all reasonable inferences in favor of the nonmoving party. Walsh v. Nat'l Computer Sys., 332 F.3d 1150, 1158 (8th Cir. 2003). "Judgment as a matter of law is proper only when the evidence is such that, without weighing the credibility of the witnesses, there is a complete absence of probative facts to support the verdict." Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 634 (8th Cir. 1998).

## IV. Discussion

### A.     Hostile Work Environment

To prevail on a hostile work environment claim, the plaintiff must show:

> (1) that she was a member of a protected group,
> (2) the occurrence of unwelcome harassment,
> (3) a causal nexus between the harassment and her membership in the protected group,
> (4) that the harassment affected a term, condition, or privilege of employment, and
> (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.

Erenberg v. Methodist Hosp., 357 F.3d 787, 792 (8th Cir. 2004). The first three elements are undisputed here. We need not decide whether McCuan's conduct rose to the level necessary to affect the term of employment, because we agree with the district court that Tatum did not show that her employer failed to take prompt and effective action to end the harassment.

"Once an employer becomes aware of sexual harassment, it must promptly take remedial action which is reasonably calculated to end the harassment." Kopp v.

<u>Samaritan Health Sys., Inc.</u>, 13 F.3d 264, 269 (8th Cir. 1993). The remedial action the Arkansas Department of Health took in this case, though perhaps not model, satisfies this requirement. The Appellee appointed Reginald Rogers, counsel for the Arkansas Department of Health, and Phil Davis, the head of the Human Resources Department to investigate the complaint. Rogers and Davis conducted interviews with the staff in the Monroe County Health Unit, questioning approximately nineteen people. During these interviews, Tatum restated her complaint, while McCuan denied the incidents had happened. The investigators eventually concluded that, without witnesses to the incidents or evidence of a pattern of harassment, they "neither believed nor disbelieved" Tatum's account. It is undisputed that McCuan did not harass Tatum after June 15.

Tatum contends that the Arkansas Department of Health failed to take her complaint seriously because of the amount of time it took to complete the investigation. Tatum presented evidence that the investigation was not begun until two weeks after her complaint and took eight weeks to complete. During the investigation, Tatum was required to work in the same office as her alleged harasser. While we do not fully endorse the Appellee's handling of Tatum's complaint, we do not find the investigation falls below the required standard. Tatum admits that no harassment occurred during this period. The fact that the investigation took two and half months does not lead us to the conclusion that the investigation was necessarily faulty. Two qualified professionals did a thorough job of investigating Tatum's complaint and issuing a finding. There was no further harassment during the investigation period. We believe Tatum failed to show that the Arkansas Department of Health failed to complete a prompt and effective investigation. Without this showing, Tatum's hostile work environment claim fails.

## B.     Constructive Discharge

"Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit." <u>Baker v.</u>

John Morrell & Co., 382 F.3d 816, 829 (8th Cir. 2004). To prove a case of constructive discharge, a plaintiff must show that: (1) "a reasonable person in her situation would find the working conditions intolerable" and (2) "the employer . . . intended to force the employee to quit." Gartman v. Gencorp Inc., 120 F.3d 127, 130 (8th Cir. 1997).

Tatum has failed to show either of these elements. Though she subjectively may have found the working conditions intolerable, this is not the standard. Id. Though Tatum was forced to work in the same office as McCuan, she presented no evidence of any further harassment or inappropriate behavior. And, though she testified she was scared of McCuan, it does not follow that this fear was reasonable, especially given that McCuan's alleged behavior, while lewd, was not directly threatening. The unfriendly behavior of Tatum's co-workers Tatum alleges also fails to show that a reasonable person would find her working conditions intolerable. More importantly, Tatum failed to provide any evidence that the Appellee intended to force her to quit. Without this evidence, the district court properly refused to submit the question to the jury.

## V. Conclusion

For the above reasons, we affirm the judgment of the district court.

_____