# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1922
_____

| | | |
|---|---|---|
| James Allen Nunley, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Department of Justice, United States | * | Appeal from the United States |
| of America; Drug Enforcement; | * | District Court for the Western |
| Agency; Officer Halfacre, Individually | * | District of Arkansas. |
| and in his official capacities; Federal | * | |
| Narcotics Agents, Individually and | * | |
| in their official capacities, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: June 21, 2005
Filed: October 14, 2005
_____

Before LOKEN, Chief Judge, and ARNOLD and COLLOTON, Circuit Judges.
_____

ARNOLD, Circuit Judge.

This case concerns the requirements of the due process clause with respect to forfeiture notices sent to a prisoner. James Nunley filed a *pro se* complaint against the Department of Justice, the "Drug Enforcement Agency," Officer Halfacre (a member of a DEA task force), and unknown federal narcotics agents, charging that the federal government violated his due process rights when it administratively

forfeited some of his property (*i.e.*, declared the property forfeited without a court order, *see* 19 U.S.C. §§ 1607-1609; 21 U.S.C. § 881) while he was incarcerated. The complaint alleges that the government did not convey forfeiture notices to Mr. Nunley using a method that was reasonably calculated to reach him and, perhaps (the complaint is not clear), that the few forfeiture notices that he did receive were defective because they did not inform him that an indigent person need not post a bond to contest a forfeiture. The district court entered summary judgment in favor of the government and dismissed the complaint with prejudice. We conclude that the district court erred, in part, and remand.

I.

A.

Working from a tip provided by an informant, law enforcement officers executed a search warrant at Mr. Nunley's home. They seized, in addition to weapons and illegal drugs, a Corvette and three separate lots of cash: one of $131,574, one of $1,025, and one of $1,815. Later on, the government seized from other individuals a speed boat and two more lots of cash, one of $10,000 and one of $5,000. Mr. Nunley arguably had an interest in the items seized from his house as well as the items seized from the other individuals.

The government issued forfeiture notices for the car, the separate lots of cash, and the boat. It sent them via certified mail to Mr. Nunley at both the jail where he was being held and his erstwhile residence. The notices sent to the jail were signed for by one or another employee of the sheriff's office for the county in which the jail is situated. Though the government received signed return-receipts for all of the notices sent to the jail, the jail's mail log reflects the receipt of only the two notices that Mr. Nunley admits to receiving: one for the $10,000 in cash and another for the boat. As to the notices sent to Mr. Nunley's previous residence, he had shared that home with Debbie Nunley, née Chaffin, prior to his arrest; she was his girlfriend-cum-roommate at the time of his arrest and became his wife around the time that the

forfeitures were taking place (the exact time is not relevant). Ms. Nunley still lived at the residence at the time that the notices were sent there to Mr. Nunley. The government also sent notices to Ms. Nunley at the same address and, with respect to the $5,000, to Mr. Nunley in care of the defense attorney who represented him in the criminal case that arose out of the seizure of the drugs. No objections to the forfeitures were filed, so the government declared the property forfeited. *See* 19 U.S.C. § 1609; 21 U.S.C. § 881.

Mr. Nunley filed this action complaining of the sufficiency of the forfeiture notices. The district court, adopting a magistrate judge's report and recommendation, granted summary judgment in favor of the defendants. It concluded that the notices sent to Ms. Nunley and to Mr. Nunley at the residence that they had shared satisfied the government's due process obligations because Ms. Nunley visited Mr. Nunley at the jail and frequently sent him mail. The court did not base its summary judgment decision on the notices sent directly to the jail because it concluded that there were questions of fact about the operation of the jail's mail-distribution practices with respect to these notices.

## I.
## B.

Mr. Nunley argues that the district court erred in granting the defendants's summary judgment motion. Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review a district court's decision to grant summary judgment *de novo* and draw all reasonable inferences in favor of the nonmoving party. *Tatum v. Arkansas Dept. of Health*, 411 F.3d 955, 959 (8th Cir. 2005).

The due process clause of the fifth amendment provides that no person shall "be deprived of ... property, without due process of law." U.S. Const. amend. V. An individual facing forfeiture risks being deprived of his or her property and thus is entitled to notice and an opportunity to be heard. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002). The due process clause does not require that the interested party receive actual notice of the pending action, however. *Id.* at 169-70. Instead, due process is satisfied if the method of notice is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Notice by mail is ordinarily presumed to be constitutionally sufficient. *See, e.g., id.* at 319; *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988). But there is no rule that mailed notice need always be considered adequate. *See United States v. One Toshiba Color Television*, 213 F.3d 147, 153 (3d Cir. 2000) (en banc); *cf. Covey v. Town of Somers*, 351 U.S. 141, 146-47 (1956).

In *Dusenbery*, the Supreme Court addressed some of the requirements of due process with respect to forfeiture notices sent to prisoners. The Court held that the government had satisfied the due process clause when it sent forfeiture notices via certified mail to a prisoner in a facility that had the following standard mail-delivery practices: A mailroom staff member would sign for the certified letter at the post office and it would be entered into a logbook at the prison; a different staff member, one assigned to the section of the prison in which the inmate lived, would sign the letter out from the mailroom; and finally a staff member would deliver the letter to the prisoner during "mail call." *Id.* at 168-69, 172-73. The Court determined that the procedures established by the prison were sufficient for due process purposes, but it never stated that such procedures were constitutionally obligatory. *Id.* at 172-73.

The government offers two arguments in support of the district court's entry of summary judgment. First, it adopts the district court's argument that the notices sent

to Mr. Nunley and to Ms. Nunley at their shared address satisfy the due process clause. Second, it contends that *Dusenbery* holds that the due process clause is satisfied when the government sends forfeiture notices via certified mail to the prison in which the addressee is housed.

Contrary to the district court and the government, we conclude that the notices sent to Ms. Nunley and to Mr. Nunley at their shared residence do not satisfy the due process clause. In *Mullane*, 339 U.S. at 317, the Court approved the use of "indirect" forms of notice when the person with an interest in the pending action is missing or unknown. It concluded, however, that indirect forms of notice do not satisfy the due process clause when the interested person's name and address are known. *Id.* at 318. The notices relied upon by the district court in its summary judgment order were indirect notices because they depended on an intermediary, Ms. Nunley, to convey their information to the interested person, Mr. Nunley. Because Mr. Nunley's identity and whereabouts were known to the government, under *Mullane*, these notices alone do not satisfy the due process clause.

The government also provided notice by publication, *i.e.*, by newspaper advertisements, but such notice is insufficient where, as here, the name and address of the interested person are known. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799-800 (1983); *Mullane*, 339 U.S. at 318. Rather, the government must send direct notice by mail or some other equally reliable means. *Mennonite Bd.*, 462 U.S. at 800. Thus, the answer to the question of whether Mr. Nunley received constitutionally adequate notice turns on the sufficiency of the notices sent to the jail.

We first consider whether there should be a presumption that notice sent by mail to the institution in which the addressee-prisoner is housed satisfies the due process clause. If the presumption does not exist, we will then be required to determine whether the notices mailed to the prison under the particular circumstances of this case nonetheless satisfy the due process clause. (In the ensuing discussion, we

use the terms "jail" and "prison" interchangeably, except with regard to Mr. Nunley's specific circumstances.)

The best reason to abandon in the prison context the presumption that mailed notice is adequate is that prison mail must navigate a second mail-distribution system. A postal worker does not personally deliver mail to each prisoner in his or her cell. Instead, the mail is left at some administrative office (or picked up at the post office by a prison employee) and then distributed within the prison.

Courts have not settled on a single view of this issue, which we have yet to address. The Seventh Circuit has decided that it will not "inquire into the details of [the] internal mail delivery systems of jails and prisons." *Chairez v. United States*, 355 F.3d 1099, 1101-02 (7th Cir. 2004), *cert. denied*, 125 S. Ct. 37 (2004). Instead, it has concluded that the delivery of certified mail to a jail discharges the government's obligations, remarking, "[s]ervice by certified mail has long been considered an acceptable means to provide notice." *Id.* at 1101-02. The court added that investigating mail-distribution procedures would be burdensome and that determining whether a jail's mail system is reliable enough for constitutional purposes would be difficult if not impossible given the fuzziness of the standard (*i.e.*, the method of notice must be reasonably calculated under the circumstances to apprise the prisoner of the forfeiture action). *Id.* at 1101. Lastly, the court noted that, in its view, *Dusenbery* does not require such an investigation. *Id. Chairez* thus essentially offers a fuller view of the government's second argument.

On the opposite end of the spectrum, the Third Circuit decided in *One Toshiba Color Television*, 213 F.3d at 155, that the government bears the burden of demonstrating that the prison employs mail-distribution procedures that are reasonably calculated to ensure that notice will be received. But Judge Alito wrote a thought-provoking dissent. In it, he takes the majority to task for failing to justify distinguishing between a notice sent to a person at "an inexpensive long-term-

occupancy hotel," which he presupposes would be presumed to be reasonably calculated under the circumstances to apprise the addressee of a pending action, and a notice mailed to a prisoner, which would not be presumed to be adequate. *Id.* at 159-60 (dissenting in part).

We believe that the right answer lies between *Chairez* and *One Toshiba Color Television*: We hold that there is no irrebuttable presumption that a prison's internal mail-distribution procedures are reasonably calculated to provide notice, but that the prisoner, as the plaintiff, has the burden to demonstrate that the procedures are inadequate.

To us, *Chairez* underemphasizes the likelihood that a second distribution system affects the delivery of mail to prisoners, overemphasizes the difficulty of assessing such systems, and misconstrues *Dusenbery*. *Mullane*, 339 U.S. at 314, directs courts to ensure that the method of notice is reasonably calculated, "under all of the circumstances," to apprise the interested party of the action. In the case of a prisoner, a relevant circumstance is that the interested party is imprisoned. This means that he or she does not receive mail in the same way that most people do because his or her mail must go through a second distribution system, run by the prison. And prisons are not post offices; their mission is not mail distribution. It is simply an ancillary responsibility that accompanies their duty as custodian of the prisoners. Thus, one should not assume that a prison is as expert in mail distribution as the postal service. We do not think, however, that it would take a heroic effort (especially for other government officials) to find out how any particular prison's mail-distribution system works – a few phone calls or e-mails before sending the notice would probably get the job done. As for determining whether the system meets the constitutional standard, we admit that it is not an exact science, but we have confidence that the government could more often than not determine whether the prison has a system such that "one desirous of actually informing the [interested party] might reasonably [rely on] to accomplish it." *Id.* at 315. (We suspect that most

prison mail-distribution systems will pass muster, and for the ones that do not, the government can try to change them, send an agent down to the prison to hand the notice to the interested prisoner, or do something else that is reasonably calculated to inform the prisoner.) Finally, we find *Chairez*'s invocation of *Dusenbery* unpersuasive. *Dusenbery* does not address the question of whether courts need to inquire into prisons' mail-distribution procedures, so it is not controlling on this point. *Cf. R.A.V. v. City of St. Paul*, 505 U.S. 377, 386-87 n.5 (1992).

With respect to the holding in *One Toshiba Color Television*, we do not agree that the government should have the burden of proving that a prison's procedures satisfy the due process clause. Time-worn rules require the conclusion that a prisoner who files a suit claiming that he or she has received inadequate notice has the burden of proving that the prison's procedures fall short of the minimum required by the Constitution. *See United States v. Cupples*, 112 F.3d 318, 320 (8th Cir. 1997). We see no reason to deviate from this norm here. Courts, to be fair (and to avoid deterring too many meritorious suits), will sometimes shift the burden of proof if a fact or group of facts is difficult for the plaintiff to ascertain, and relatively easy for the defendant to procure. *Cf. Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2002), *cert. denied*, 540 U.S. 938 (2003). But we do not think that it is difficult for a prisoner to adduce facts about the mail-distribution procedures used in a jail: he or she probably lives there and such facts are not likely to be closely guarded penological secrets.

As for Judge Alito's dissent, we think that it demands more evidence for making judgments about the efficacy of means of notice than the Supreme Court requires. For example, in *Mullane*, 339 U.S. at 319, when the Court endorsed the mail as a method of notice reasonably calculated to provide notice under the circumstances, it did not depend on record evidence. Instead, it stated, "however it may have been in former times, the mails today are recognized as an efficient and inexpensive means of communication." *Id.* In other words, the Court made a

commonsense judgment about the reliability of a method of notice. Common sense tells us that as compared to a resident of a cheap long-term-occupancy hotel, a prisoner is less likely to receive his or her mail because residents of such hotels have a greater ability to ensure effective mail distribution (by the hotel) via complaint and voting with their feet. *See One Toshiba Color Television*, 213 F.3d at 154. The point is this: we have to make commonsense judgments about the efficacy of methods of notice in different circumstances, and common sense indicates that prisoners are less likely to receive their mail than free persons, even if the free people live in cheap hotels.

Having determined that there is no irrebuttable presumption that notice mailed to prisons is adequate, we turn our attention to the specific circumstances of this case. We conclude that the government was not entitled to judgment on all of Mr. Nunley's claims of inadequate notice. To discharge its responsibility as the movant, the government needed to demonstrate to the district court that there is an absence of evidence to support one or more of Mr. Nunley's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In its motion, the government essentially argues that no evidence establishes that it failed to employ a method of notice reasonably calculated to reach the jail. But as the above discussion makes clear, this argument leaves unaddressed a crucial portion of Mr. Nunley's claims, namely, whether the jail's internal mail-delivery procedures were constitutionally adequate. As the government did not challenge Mr. Nunley's case in regard to the sufficiency of the internal procedures, the burden never shifted to Mr. Nunley to produce evidence regarding their adequacy. *See id.* at 323; *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339-40 (8th Cir. 1988).

For clarity's sake, we note that the district court's request for supplemental information about the jail's internal procedures does not require us to reach a different conclusion. A district court can enter summary judgment *sua sponte* if " 'the losing party was on notice that [it] had to come forward' " with its relevant evidence.

*Stone v. General Motors Corp.*, 400 F.3d 603, 607 (8th Cir. 2005) (quoting *Celotex*, 477 U.S. at 326). Thus, a request for more information on an issue, depending on its wording, could shift the burden of production to the non-movant who has the burden of proof on that issue at trial. Here, however, the district court instructed the government to supplement its motion for summary judgment with information about "how certified mail, once received at the [jail], is delivered to prisoners" and stated that Mr. Nunley could respond "if he desires to do so." We hold that this order did not put Mr. Nunley on notice that he needed to come forward with evidence regarding the jail's internal mail-distribution procedures because it addresses his role in permissive terms, affording him the opportunity to address the issue, but not directing him to do so. Thus, the question of whether the internal procedures were sufficient is not cognizable on this record.

The government is nevertheless entitled to summary judgment as to Mr. Nunley's claims regarding the method of distribution of three of the notices. The government afforded Mr. Nunley due process as to the $5,000 when it sent the forfeiture notice to him in care of his attorney. *Cf. Cupples*, 112 F.3d at 320*; United States v. Indoor Cultivation Equip.*, 55 F.3d 1311, 1318 (7th Cir. 1995). The government is also entitled to summary judgment with respect to the notices for the $10,000 and the boat: The attorney who represented Mr. Nunley at oral argument conceded that Mr. Nunley received these notices, and a person cannot complain about the constitutionality of the method used to provide notice when he or she has received actual notice (assuming it is timely), for he or she has suffered no harm. *See One Toshiba Color Television*, 213 F.3d at 155.

## II.

Mr. Nunley also argues that the district court erred by granting summary judgment on his supposed claims that the notices that he received did not afford him due process because not one of them states that an indigent need not post a bond to contest a forfeiture. The district court did not expressly rule on these purported

claims, which Mr. Nunley specifically pressed in his response to the summary judgment motion, though it did state that "the plaintiff's claims [are] dismissed." We conclude that the district court should explicitly address the proper disposition of the supposed content-of-the-notice claims on remand. *See Glasgow v. United States Drug Enforcement Admin.*, 12 F.3d 795, 799 (8th Cir. 1993). What the appropriate disposition of these claims is will depend on whether they can be said to have been fairly raised in the original complaint (a question complicated by the fact that this is a *pro se* complaint subject to a liberal standard of interpretation, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). The answer to this question is not self-evident, and "[i]n these circumstances, we will not affirm the summary dismissal of [potential] claims the district court has not expressly addressed." *Glasgow*, 12 F.3d at 799. We note that if the complaint fairly raised these claims, then summary judgment on the present record probably would not be appropriate because it does not appear that the government moved for summary judgment on these claims with the specificity required by our previous cases. *See, e.g., Counts*, 862 F.2d at 1339-40.

### III.

For the reasons given above, we conclude that the district court improperly granted summary judgment as to Mr. Nunley's claims about the method of notice used for the Corvette and the cash allotments of $131,574, $1,025, and $1,815, and as to the potential claims regarding the contents of the notices. We affirm the district court's entry of summary judgment as to the claims regarding the method of notice for the $5,000, the $10,000, and the boat. We remand the case for proceedings consistent with this opinion.

COLLOTON, Circuit Judge, dissenting.

I conclude that the efforts of the Drug Enforcement Administration to provide notice of forfeiture proceedings to James Nunley were "reasonably calculated, under all the circumstances," to apprise Nunley of the pendency of the action and to afford

him an opportunity to object to the forfeiture. *See Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The actions taken by the DEA were not "mere gesture[s]," but means that "one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315. Therefore, I would affirm the judgment of the district court.

Certified mail to Nunley at his place of incarceration was the principal means employed by the DEA to provide Nunley with notice of the forfeiture proceedings, and I believe it was sufficient. The DEA sent Nunley a notice of each disputed forfeiture proceeding by certified mail to the Washington County Detention Center where he was housed. The record shows that each mailing was received by an employee of the sheriff's office, with proof of signature presented. The motion for summary judgment, as supplemented, established that the jail operated under a written policy providing that incoming mail shall in no case be held longer than 24 hours, excluding weekends or holidays. The policy further dictated that "[d]istribution of incoming mail shall be done by a detention officer, directly to the receiving detainee's hand," and that mail shall not be "dropped on a table or other convenient place for each detainee to come and look for his own." (Def.'s Supp. to Mot. for Summ. J., Ex. F, at 3).

As of 2000, a "clear plurality" of the federal courts of appeals held that certified mail to a prisoner "is presumptively sufficient" to satisfy due process. *Whiting v. United States*, 231 F.3d 70, 76-77 (1st Cir. 2000). In these circuits, absent evidence that the government knew that mail delivery in a particular prison was unreliable, or other special circumstances tending to rebut the presumption, the use of certified mail to the institution was thought "reasonably calculated" to afford notice. *Id.* at 76; *see also United States v. 5145 North Golden State Blvd.*, 135 F.3d 1312, 1315-16 (9th Cir. 1998); *United States v. Tree Top, et al.*, No. 96-3757, 1997 WL 702771, at *2 (6th Cir. Oct. 31, 1997) (per curiam) (unpublished); *United States v. Clark*, 84 F.3d 378, 381 (10th Cir. 1996).

-12-

The Supreme Court, noting that "Courts of Appeals have reached differing conclusions about what the Due Process Clause requires of the United States when it seeks to provide notice to a federal inmate of its intention to forfeit property," then granted certiorari to consider the question. *Dusenbery v. United States*, 534 U.S. 161, 166 (2002). In *Dusenbery*, the Court held that "actual notice" to an inmate is not required, and that the government satisfies the Due Process Clause if its efforts are "reasonably calculated" to afford notice and an opportunity to object. In that case, the record showed that the FBI sent certified mail to an inmate at the facility where he was incarcerated. Under standard procedures, prison staff traveled to a post office daily to retrieve the mail, signed for all certified mail at the post office, transported the mail back to the prison, and entered the mail in a logbook. Another staff member then signed for the certified mail when it was removed from the mail room, and staff distributed the mail to the inmate during the institution's "mail call." The Court concluded that these procedures afforded due process, even assuming the inmate's contention that additional procedures could have improved delivery to some degree. *Id.* at 172.

The only apparent difference between the internal mail procedures described in *Dusenbery* and the procedures established in this case involves the logging of mail in and out of a mail room at the correctional facility. The federal prison in *Dusenbery* maintained such a log; the record in this case does not show whether the local jail kept such a record of certified mail. *Dusenbery*, however, did not purport to establish minimum procedures necessary to afford due process, and this variance does not strike me as constitutionally significant. More persuasive is the view of the plurality of pre-*Dusenbery* courts, and the only post-*Dusenbery* decision on point, *Chairez v. United States*, 355 F.3d 1099, 1102 (7th Cir. 2004), that delivery of certified mail to the institution is presumptively sufficient to satisfy due process. And where, as here, the jail has a written policy requiring staff to transport mail "directly to the receiving detainee's hand" within 24 hours of delivery, we have more than delivery by certified mail and a presumption of sufficiency. We have an internal policy that mandates

prompt personal delivery of mail to detainees, and no evidence from Nunley to raise a genuine question about the jail's regular adherence to that policy. Under these circumstances, I believe the use of certified mail was reasonably adopted by a federal agency that was desirous of actually informing Nunley of the forfeiture proceedings.

To be sure, prisons are not post offices, and inmates are not like guests at a cheap hotel who might, at least theoretically, vote with their feet and move to another cheap hotel if mail service is faulty. But there is a presumption of regularity in the conduct of public officials, and "market forces" of a different sort are not entirely absent. If a jail regularly fails to comply with a policy on delivery of mail to inmates, then there will be negative consequences for the jailer. It will become known to government officials that mail service at the jail is unreliable. Such knowledge will preclude the use of certified mail to notice forfeiture proceedings, *Chairez*, 355 F.3d at 1102; *Whiting*, 231 F.3d at 77, thus increasing costs for other government agencies or interfering in particular cases with the ability of the federal government to forfeit property. This is not likely to sit well with federal agencies who provide valuable resources and assistance to local law enforcement officials, not to mention with voters who typically elect the sheriffs who oversee jails. It may even result in the loss of shared forfeiture proceeds by the local government. And as the First Circuit explained, it is not only the incentives of jailers that should be considered: "It is well to be realistic about the situation: given the incentives, inmate denials that mailed notice was actually received are doubtless much more common than misdelivery, and knowledge is probably widespread among defendants in drug cases that the government does look to harvest assets from drug dealers incident to criminal cases." *Whiting*, 231 F.3d at 77.

The Washington County Detention Center undoubtedly could adopt written procedures to specify precisely which staff member is to retrieve inmate mail from the point of delivery and distribute it "directly to the receiving detainee's hand." The jail could institute a logbook to track who picks up and delivers the mail once it is

received by the sheriff's office. And if the jail did not enhance its procedures, then the DEA could divert agents from investigative work to make hand deliveries of forfeiture notices to inmates. But the overriding message of *Dusenbery*, as I read it, is that the Due Process Clause does not require exacting scrutiny of internal jail procedures for mail delivery, and the potential for new procedures that would improve reliability does not necessarily demonstrate the infirmity of old ones. The standard is one of reasonableness. 534 U.S. at 170. On the undisputed record in this case, I conclude that the DEA's use of certified mail addressed to Nunley, who was incarcerated at a facility that maintained an internal policy of delivering mail directly to a receiving detainee's hand within 24 hours, was reasonably calculated to provide Nunley with notice. Therefore, I would affirm the judgment of the district court.

_____