Board of Tax and Land Appeals
No. 2009-805

APPEAL OF CITY OF CONCORD

Argued: September 15, 2010
Opinion Issued: November 24, 2010

*Gardner, Fulton & Waugh, PLLC*, of Lebanon (*H. Bernard Waugh, Jr.* on the brief and orally), for the petitioner.

Juniper Fells, *LLC*, of Manchester, filed no brief.

DUGGAN, J. The City of Concord (City) appeals an adverse ruling of the New Hampshire Board of Tax and Land Appeals (BTLA). We reverse.

The following facts are supported by the record. Juniper Fells, LLC (taxpayer) sought cluster subdivision approval from the City for a subdivision known as Juniper Fells Phase IV consisting of five building lots and a common area. The total acreage of the building lots was less than ten acres. The common area consisted of 14.52 acres.

The City Planning Board granted "conditional preliminary and final approval" on March 15, 2006. This approval was conditioned on the taxpayer's conveyance of the common area to the City — a condition that was satisfied in August 2006. As a result of this conveyance, the subdivision's remaining land no longer qualified for current use taxation. Thus, at the time of the conveyance, the taxpayer became liable to pay the land use change tax. *See* RSA 79-A:7, IV(c) (Supp. 2008) ("land use shall be considered changed and the land use change tax shall become payable when . . . [b]y reason of size, the site no longer [meets the minimum acreage requirement of 10 acres or less]"); *see also* N.H. ADMIN. RULES, Cub 101.02(b).

On August 6, 2007, the City issued five land use change tax (LUCT) bills to the taxpayer. The BTLA found that the tax bills were mailed by the City but not received by the taxpayer. On March 10, 2008, the taxpayer received a "notice of tax delinquencies and unredeemed tax liens." On March 31, 2008, the taxpayer filed an abatement petition with the City. The record does not reveal whether the City took any action on the abatement petition. The next day, April 1, 2008, the taxpayer filed an appeal with the BTLA.

The City moved to dismiss the appeal, arguing that timely filing of an abatement request is a jurisdictional prerequisite to a BTLA appeal. *See* RSA 79-A:10, I (2003) (giving taxpayers two months from notice of tax date to apply to the selectmen or assessors for an abatement). The taxpayer

countered that it did not receive actual notice that the LUCT was being levied, and that its due process rights would be violated if the BTLA declined to hear its appeal for lack of timely filing.

The BTLA concluded that "the Taxpayer had neither constructive nor actual notice of the LUCT bills" and ruled:

> [T]he board finds [that declining to consider the Taxpayer's appeal as untimely] would result in a fatal and inequitable conclusion thus depriving the Taxpayer of its due process rights. Consequently, the board concludes the Taxpayer's notice of the LUCT bills occurred with the lien notice dated March 10, 2008 and thus the Taxpayer's abatement requests are timely. The board understands this conclusion does not comport exactly with the statutory provisions but to rule otherwise would not be compliant with the constitutional provisions of due process contained in Pt. I, Art. 15 of the New Hampshire Constitution.

The City's motion for rehearing was denied, and this appeal followed. Our review of BTLA decisions is established by statute:

> [T]he burden of proof shall be upon the party seeking to set aside any order or decision of the [BTLA] to show that the same is clearly unreasonable or unlawful, and all findings of the [BTLA] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

RSA 541:13 (2007); *see also Appeal of Kat Paw Acres Trust*, 156 N.H. 536, 537 (2007) ("Appeals from BTLA decisions are governed by RSA chapter 541 (2007)."). "Although we review the [BTLA's] findings of fact pursuant to this deferential standard, we review its statutory interpretation *de novo*." *Appeal of Gamas*, 158 N.H. 646, 648 (2009).

The City argues that the BTLA was without jurisdiction to hear the taxpayer's appeal. Specifically, it argues that RSA 79-A:10 (2003) and RSA 76:16-a, I (2003) require that a taxpayer file a timely abatement petition with the City before taking an appeal to the BTLA. In addressing this argument, we examine the controlling statutes.

The interpretation of a statute is a question of law, which we review *de novo*. *Kenison v. Dubois*, 152 N.H. 448, 451 (2005). "We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole[,] . . . and, where possible, we ascribe the plain and ordinary meanings to the words used." *Id.* (citation omitted). "When the

language of a statute is clear on its face, its meaning is not subject to modification." *Dalton Hydro v. Town of Dalton*, 153 N.H. 75, 78 (2005). "We will neither consider what the legislature might have said nor add words that it did not see fit to include." *Id.*

RSA 79-A:10, I, states, "[A]ny person aggrieved by the assessment of a land use change tax may, within 2 months of the notice of tax date and not afterwards, apply in writing to the selectmen or assessors for an abatement of the land use change tax." "Notice of tax date" is defined as "the date the taxing jurisdiction mails the land use change tax bill" to the taxpayer. RSA 79-A:10, IV. Additionally, RSA 76:16-a, I (2003) states:

> If the selectmen neglect or refuse to so abate, in accordance with RSA 76:16, any person aggrieved, having complied with the requirements of RSA 74, upon payment of a $65 filing fee, may apply in writing to the board of tax and land appeals. The appeal shall be filed on or before September 1 after the date of notice of tax under RSA 76:1-a, and not afterwards.

We agree with the City that the plain language of these statutes admits of no exceptions. Taken together, the statutes require a taxpayer to first file an abatement petition with the taxing authority "within 2 months of the notice of tax date and not afterwards." RSA 79-A:10. Under RSA 76:16-a, I, an appeal to the BTLA is permitted only "[i]f the selectmen neglect or refuse to abate." Thus, failure to file an abatement petition within two months after the notice of tax date bars BTLA review.

In *Appeal of Estate of Van Lunen*, 145 N.H. 82, 86 (2000), we stated: "The statutory deadlines for requesting a tax abatement under RSA chapter 76 and its predecessor have historically been strictly enforced, and failure to timely submit an appeal is fatal regardless of accident, mistake, or misfortune." (Citations omitted.) *See also Appeal of Roketenetz*, 122 N.H. 869 (1982); *Arlington Am. Sample Book Co. v. Board of Taxation*, 116 N.H. 575, 577 (1976) (affirming State Board of Taxation's dismissal of appeal where petition for abatement was untimely). In *Appeal of Town of Sunapee*, 126 N.H. 214 (1985), we reversed the BTLA's order reducing the town's assessment where the property owner failed to file for an abatement. We held:

> Under RSA 76:16-a, I (Supp. 1983) a taxpayer is authorized to seek relief from the board [of tax and land appeals] only "if the selectmen neglect or refuse to abate." The subject matter jurisdiction of the board is thus limited to the subject of the selectmen's refusal or neglect. Selectmen can be said to neglect or refuse only what a taxpayer has first requested. Hence, the

jurisdiction of the board is limited to the subject of a taxpayer's original request to the selectmen. It is a truly appellate jurisdiction. Since the taxpayers did not ask the selectmen to abate taxes on the . . . lot [in question], the board can order no abatement as to that lot.

*Id.* at 216 (citation, brackets and ellipses omitted).

Here, the notice of tax date was August 6, 2007, *see* RSA 79-A:10, IV, and the taxpayer filed for an abatement on March 31, 2008 — more than seven months later. The taxpayer did not apply in writing for an abatement within the two months provided by statute. *See* RSA 79-A:10. The BTLA was therefore without jurisdiction. *See Sunapee*, 126 N.H. at 216; *Thayer v. State Tax Comm'n*, 113 N.H. 113 (1973).

In its decision, the BTLA relied on *H.J.H. Inc. v. State Tax Comm'n*, 108 N.H. 203 (1967), where we excused a taxpayer's failure to file a statutorily-required inventory before appealing to the State Tax Commission. However, *H.J.H.* was decided under prior law and has since been superseded by statute. *Appeal of Brady*, 145 N.H. 308, 310 (2000).

We turn next to whether the BTLA correctly concluded that application of these statutes to this taxpayer violated the taxpayer's due process rights. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314 (1950). While notice "which is a mere gesture" does not satisfy due process, a "chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Id.* at 315 (citations omitted). However, "[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way [of vital state interests] could not be justified." *Id.* at 313-14.

Applying these principles, the overwhelming majority of courts have held that notice by mail is sufficient to satisfy due process. For example, in *Akey v. Clinton County, N.Y.*, 375 F.3d 231, 233 (2d Cir. 2004), the county sent notices of foreclosure by ordinary first-class mail to taxpayers who failed to pay their property taxes. Later, the county's attempt to sell the properties at auction was opposed by several delinquent taxpayers claiming their due process rights were violated by the county's chosen notification method. *Id.* at 233. The court held:

> Where, as here, the County provides evidence that the notices of foreclosure were properly addressed and mailed in accordance with regular office procedures, it is entitled to a presumption that the notices were received. Denial of receipt, without more, is insufficient to rebut the presumption.

*Id.* (citation omitted); *see also Jones v. Flowers*, 547 U.S. 220, 226 (2006) (recognizing "ample precedent condoning notice by mail"); *Greene v. Lindsey*, 456 U.S. 444, 455 (1982) ("the mails provide an efficient and inexpensive means of communication, upon which prudent men will ordinarily rely in the conduct of important affairs" (quotation and citations omitted)); *Nunley v. Department of Justice*, 425 F.3d 1132, 1136 (8th Cir. 2005) ("Notice by mail is ordinarily presumed to be constitutionally sufficient."); *Republic Bank v. Genesee County Treasurer*, 690 N.W.2d 917, 921 (Mich. 2005) ("Notice by mail is adequate." (quotation omitted)).

■ It is settled law that while actual notice should be the goal, *Mullane*, 339 U.S. at 315, it is not required in every case, *e.g.*, *id.* at 319 ("reasonable risks that notice might not actually reach every beneficiary are justifiable"); *United States v. 51 Pieces of Real Property, Roswell, N.M.*, 17 F.3d 1306, 1316 (10th Cir. 1994) ("Due process does not require, however, that the interested party actually receive notice. So long as the government acted reasonably in selecting means likely to inform the persons affected, then it has discharged its burden." (quotations, brackets, and citations omitted)); *cf. Kakris v. Montbleau*, 133 N.H. 166, 176 (1990) ("[W]e hold that due process simply required the town to undertake reasonable efforts, not Herculean ones, to determine the identity of the owner of [the] property.").

■ We therefore hold that the BTLA erred in concluding that due process entitled the taxpayer to actual notice. The City placed the LUCT bills in the mail on August 6, 2007, and nothing in the record indicates that the mail was returned unclaimed or undeliverable. *Cf. Jones*, 547 U.S. at 225 ("We hold that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so."). Applying the precedents above, we conclude that the City's reliance on the United States Postal Service was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314; *see Dusenbery v. United States*, 534 U.S. 161, 179 (2002) (Ginsburg, J., dissenting) ("on-time delivery rate of first class mail

between 87% and 94%"); *Nunley*, 425 F.3d at 1138-39 ("we have to make commonsense judgments about the efficacy of methods of notice in different circumstances").

We note that in *Ladd v. Coleman*, 128 N.H. 543 (1986), we held that certain notification methods violated a tenant's due process rights. In *Ladd*, the court rendered its judgment on March 28 and sent its decision by mail on March 29. *Id.* at 544. The tenant received the decision on April 1 and appealed to the superior court on April 4. *Id.* The superior court rejected the tenant's appeal, noting that the tenant "had not filed his appeal within three days of the district court's rendition of judgment," *id.* at 545, as required by RSA 540:20, *see id.* at 546 (explaining the three day appeal period). We held that "the period for exercising a litigant's right to appellate review under RSA 540:20 begins to run when the litigant is actually or constructively notified of the court's decision." *Id.* at 546-47. Our holding in *Ladd*, however, is confined to the unique facts and statutory appeal period of that case. Similarly, in *Appeal of Gallant*, 125 N.H. 832, 836 (1984), we held that the Appellate Division of the Department of Employment Security erred in denying a claimant's late appeal. There, the claimant mailed notice of intent to appeal three days before the expiration of the fifteen day appeal period, but "[f]or reasons attributable solely to the postal service, the letter of appeal did not arrive at the appellate division" until after the deadline had passed. *Id.* at 833. We held:

> The purpose of the unemployment compensation law is "to prevent . . . [the] spread [of unemployment] and to lighten the burden which now so often falls with crushing force upon the unemployed worker and his family . . . ." Laws 1981, 408:2. A remedial statute such as the unemployment compensation law should not be administered so as to burden claimants unfairly with the risk of delayed mail delivery. Such a draconian bar to a late appeal, no matter how faultless the claimant may be, could lead to absurd results. Under the department's interpretation, if the notice of its decision were delayed more than 15 days in the mail, the claimant's appeal rights to the appellate division would be lost, even though the claimant had never received notice of the decision.

*Id.* at 835. Unlike *Gallant*, the case before us does not involve a remedial statute. It involves a municipality's efforts to collect taxes already due. *See* RSA 79-A:7, II ("The land use change tax shall be due and payable by the owner at the time of the change in use."). The statutes governing the procedures to be followed in tax abatement proceedings have been strictly

construed. *See, e.g., Van Lunen,* 145 N.H. at 86; *Roketenetz,* 122 N.H. at 870 ("[two] months means [two] months").

Because we rule in favor of the City with regard to the timeliness of the taxpayer's appeal, we need not address the other arguments the City raises on appeal.

*Reversed.*

DALIANIS, HICKS and CONBOY, JJ., concurred.